**William E. SLAMON**

v.

**WESTINGHOUSE ELECTRIC CORP.**

**Civ. A. No. 73–1591.**

United States District Court,
E. D. Pennsylvania.

Nov. 5, 1974.

⊗—43

⊗—44(1)

Thomas Dempsey, Philadelphia, Pa., for plaintiff.

Mari M. Gursky, Philadelphia, Pa., for defendant.

## OPINION

BECHTLE, District Judge.

Plaintiff, William E. Slamon, instituted this civil rights action on his own behalf, alleging that his former employer, Westinghouse Electric Corporation ("Westinghouse"), discriminated against him on the basis of his religious preference. Specifically, plaintiff contends that upon his return to work following a lay-off of approximately 16 months he was demoted from laborer grade eight (8) to laborer grade three (3) because of his Catholic religion. The complaint, based on the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., seeks money damages, costs of litigation and reasonable attorney fees. Jurisdiction of this Court was properly invoked pursuant to 42 U.S.C. § 2000e–5(f). This Opinion constitutes the Findings of Fact and Conclusions of Law required by Fed.R.Civ.P. 52(a).

A brief outline of the relevant chronology is necessary in order to properly focus on the issues presented in this action. Plaintiff began his employment at Westinghouse in March, 1941, as a machinist's helper. Between the time period of March, 1941, and July, 1968, plaintiff received several promotions, served in the military for approximately 14 months, and was granted several disability leaves. In July of 1968, Slamon was again placed on temporary disability. At that time, plaintiff was classified as

a laborer grade eight (8), lock slot milling machine operator. On November 24, 1969, plaintiff was rehired by Westinghouse as a laborer grade three (3), machine operator's helper. Plaintiff continued to work in defendant's employ until June 10, 1970, at which time he was placed on permanent disability.

The plaintiff was the sole witness in his behalf. The substance of plaintiff's testimony was that throughout his employment at Westinghouse he was subjected to constant harassment, ridicule, and personal embarrassment because of his religious beliefs and practices. The sole person alleged to be responsible for the religious slurs and the perpetration of discriminatory employment practices was one George Kline, a general supervisor at the Westinghouse plant. According to the testimony of the plaintiff, Kline repeatedly ridiculed him for attending religious functions, constantly referred to his Catholic religion in vulgar and profane language, and denied his requests for time off in order to attend church-related activities. The plaintiff testified that Kline was directly responsible for his classification as a laborer grade three (3) upon his return to defendant's employ in November, 1969. The complaint contained the allegation, and plaintiff theorized at trial, that the classification as a laborer grade three (3) employee severely prejudiced his right to pension and retirement benefits.

In addition to the testimony of George Kline, the defendant called two fellow employees of the plaintiff, two general supervisors, the supervisor of employee services, and the director of labor relations. Kline emphatically denied each and every allegation of religious discrimination made by the plaintiff. The two fellow employees of Slamon, who were both Catholic, testified that they never saw nor heard Kline ridicule the plaintiff with respect to his religious practices or make any derogatory remarks about Catholicism in general. The two general supervisors substantially corroborated the testimony of the two

hourly employees. Both supervisors stated that they had known and worked with Kline for at least ten years and had never heard Kline harass or criticize the plaintiff because of his religious beliefs.

Howard Clark, the supervisor of employee services at Westinghouse, testified concerning the company's pension plan, group insurance, and disability programs. The above witness stated that the plaintiff is currently receiving permanent disability payments of $178 per month and that such payments will continue until April, 1975, at which time the disability payments will cease and benefits under the retirement and pension programs will begin. Clark further testified that the classification of plaintiff as a laborer grade three (3) upon his return to work had no effect whatsoever on the amount of benefits to which the plaintiff is entitled under the defendant's pension and disability plan.

The final witness in defendant's behalf was Carl Schaeffer, director of labor relations at the Westinghouse plant. Schaeffer testified that the classification of the plaintiff as a laborer grade three (3) machine operator's helper was based on a longstanding company hiring policy and not on the plaintiff's religious persuasion. The hiring policy in question is that an employee who has been on temporary disability leave for more than one year is not automatically entitled to his former job and accompanying employment classification upon his return to work. Schaeffer testified that since the plaintiff was on temporary disability leave for approximately 16 months he possessed no vested right in the laborer grade eight (8) classification.

The testimony of Schaeffer and Clark revealed that at the time the plaintiff expressed a desire to return to work there were no openings in the classification of laborer grade eight (8), lock slot milling machine operator. The only position available at the time of Slamon's return was that of machine operator's helper, which position the plaintiff was

offered and accepted. The evidence adduced at trial further indicated that George Kline had no knowledge of the plaintiff's return to work until after the plaintiff had accepted the job as a machine operator's helper. Both Schaeffer and Clark testified that the offer of the machine operator's helper position to the plaintiff was based on a requisition form submitted to the labor relations department prior to plaintiff's appearance at the Westinghouse plant.

## FINDINGS OF FACT

Based on the evidence presented during the one-day trial of this matter, the Court makes the following findings of fact:

(1) When plaintiff was placed on temporary disability in July of 1968, he was classified as a laborer grade eight (8), lock slot milling machine operator.

(2) On November 24, 1969, plaintiff was rehired by the defendant as a laborer grade three (3), machine operator's helper.

(3) At the time plaintiff was rehired by the defendant there were no available jobs within the classification of laborer grade eight (8), lock slot milling machine operator.

(4) Other than several jobs which plaintiff rejected as being unacceptable, the only opening in the Westinghouse plant for which the plaintiff possessed the necessary qualifications was that of machine operator's helper.

(5) Plaintiff was hired as a machine operator's helper in accordance with valid company procedure, i. e., that those individuals who return to work after being on temporary disability leave for more than one year are not automatically entitled to the position held immediately prior to the disability leave.

(6) George Kline was not aware of plaintiff Slamon's return to work at Westinghouse until after the plaintiff had been assigned to work as a machine operator's helper.

(7) Defendant Westinghouse did not discriminate against the plaintiff on the basis of his religion.

(8) The plaintiff is currently receiving permanent disability payments in the amount of $178 per month and in April, 1975, will be entitled to receive monthly payments under the defendant's pension and retirement program. The fact that the plaintiff was hired as a machine operator's helper will not decrease the amount of benefits receivable under the defendant's retirement and pension program.

(9) Defendant's supervisory employees, including George Kline, at no time made any derogatory or profane remarks concerning plaintiff's religion. Similarly, defendant's supervisory employees at no time participated in any action of harassment or indignity based on plaintiff's religion.

## CONCLUSIONS OF LAW

The Court concludes that plaintiff has failed to show that Westinghouse engaged in discriminatory employment practices based on religion. In order to prove discrimination in the denial of employment, the plaintiff must show, *inter alia*, that he applied for and was qualified for a job for which the employer was seeking applicants. McDonnell Douglas Corp. v. Green, 411 U. S. 792 (1973), 93 S.Ct. 1817, 36 L.Ed.2d 668; Motorola, Inc. v. McLain, 484 F.2d 1339 (7th Cir. 1973). The credible evidence presented in this case established that the plaintiff was hired as a laborer grade three (3), machine operator's helper, because at the time he applied that was the only position available for an individual of plaintiff's skills and qualifications. While plaintiff testified that he desired to return to Westinghouse as a laborer grade (8), lock slot milling machine operator, the evidence clearly demonstrated that such position was not available at the time plaintiff returned from disability leave. We find the classification of the plaintiff as a laborer grade three (3) was based on the

established hiring policy of the company and not on invidious religious considerations.

Accordingly, the relief requested by the plaintiff will be denied.[1]

---

1. The Opinion in this matter is based on the Court's recollection of the testimony offered and on bench notes taken during the course of the trial. As of the writing of this Opinion, no transcript has been prepared.