UNIVERSITY OF TENNESSEE *v.* PEOPLES BANK *et al.*\*

(*Jackson.* April Term, 1928.)

Opinion filed May 28, 1928.

1. **PUBLIC FUNDS. MONEY ACQUIRED FOR SCHOOL PUR-POSES. PREFERENCE BY REASON OF STATE SOVER-EIGNTY.**

Money acquired by the State for school purposes is acquired for a governmental purpose and is held in its sovereign capacity; and the identity of the fund is not lost, nor the nature of the State's title changed, by the deposit thereof in a bank at interest.  (Post, p. 92.)

Citing: Maryland Casualty Co. v. McConnell, 148 Tenn., 656.

2. **PUBLIC FUNDS. UNIVERSITY OF TENNESSEE. PREFER-ENCE.**

Property or money devoted by the State to the establishment and maintenance of the University of Tennessee is entitled to the protection of the preference and priority arising from the State's sovereignty.  (Post, p. 92.)

Citing: Maryland Casualty Co. v. McConnell, 148 Tenn. (21 Thomp.), 656; Fidelity & Guaranty Co. v. Rainey, 120 Tenn. (12 Cates) 357.

3. **STATE SOVEREIGNTY. LOSS OF RIGHTS.**

When the State becomes a common carrier, or a corporator or a partner in a railway company, it has sunk the right and dignity of the sovereign to a level with those of the citizen, and in coming to litigate its rights in the courts, its controversy can only be treated as one between man and man.  (Post, p. 92.)

Citing: Fields v. Wheatley, 33 Tenn. (1 Sneed), 351; White v. Nashville & N. W. R. R. Co. et al., 54 Tenn. (7 Heisk.), 518, 546, 547.

4. UNIVERSITY OF TENNESSEE. SOVEREIGNTY. AGENCY OF STATE. PROPERTY. EDUCATION.

Although the University of Tennessee was incorporated by an act of the legislature, and property and money held in its name, the State and the public represented by it, must be considered as the owner of the property held by the University, and that the sovereign character of the State's ownership was not changed by the creation of the corporation, as a convenient means through which the State exercises the strictly governmental function of educating the youth among its citizens. (Post, p. 95.)

5. UNIVERSITY OF TENNESSEE. CONTRIBUTIONS BY COUNTIES. BECOMES PROPERTY OF STATE.

The proceeds of a bond issue for a county made pursuant to an act of the legislature for the purpose of aiding the University of Tennessee in establishing a junior college, while so far a county purpose as to authorize the issuance thereof, became upon delivery to the University Trustees, the property of the State, devoted to the purpose of education, and particularly to the establishment and extension of the junior college, all of which is primarily a State purpose, and neither the State or the University was an agency of the county in expending such money. (Post, p. 95.)

Citing: Ransom v. Rutherford County, 123 Tenn. (15 Cates), 1; Board of Education v. Shelby County, 155 Tenn. (2 Smith), 212; State v. True, 116 Tenn. (8 Cates), 294; Edmondson v. Board of Education, 108 Tenn. (24 Pick.), 557; Leeper v. State, 103 Tenn. (19 Pick.), 500; Chapter 9, Public Acts 1927.

6. PUBLIC FUNDS. PREFERENCE. BONDS. DECREE. DISCRETION OF CHANCELLOR.

Where it appears that a bank (now in hands of a receiver), has given bond to an arm of the State to secure the payment of "public moneys of and for the State," deposited therein, it is not an abuse of his discretion for the chancellor to decree that the re-

ceiver and the bank pay the deposit as a preferred claim, in preference to any unsecured general creditor, and against the sureties on the bond "for any deficit there may be after exhausting complainants said priority," instead of awarding a decree against the principal and sureties jointly, so that the complainant might have execution issued against the sureties without awaiting the result of the execution against the receiver. (Post, p. 96.)

7. **PRINCIPAL AND SURETIES. BONDS. ATTORNEY'S FEE.**
In a suit against the sureties on a bond which provides for the payment of attorney's fee, a decree for such attorney's fee should be rendered against both the principal and sureties and not against the sureties alone. (Post, p. 97.)

8. **PRINCIPAL AND SURETY. BONDS. INSOLVENT BANK.**
Where a decree is rendered against an insolvent bank or its receiver, and its sureties on a bond given to secure a deposit of public funds, if any part of the money so decreed is paid by the sureties, they shall be entitled to file their claims with the receiver in the amount so paid by them as an unsecured debt owing them by the bank. (Post, p. 98.)

---

*Headnotes 1. Banks and Banking, 7 C. J., section 543; 2. Depositaries, 18 C. J., section 60; 3. ———; 4. Banks and Banking, 7 C. J., section 524 (Anno.).

---

### FROM WEAKLEY.

---

Appeal from the Chancery Court of Weakley County. —HON. V. H. HOLMES, Chancellor.

GREEN, WEBB & BASS, for complainant.

MAIDEN, ROWLETT & MAIDEN, for defendant.

MR. JUSTICE SWIGGART delivered the opinion of the Court.

The Peoples Bank of Martin was placed in the hands of a Receiver by the Chancery Court of Weakley County in September, 1927, for liquidation as an insolvent bank. It had on deposit to the credit of the University of Tennessee the sum of $30,891.13. Of this deposit $26,500 represented a portion of the proceeds of a bond issue of Weakley County, authorized by Chapter 172 of the Private Acts of 1927. The remainder, amounting to $4391.-13, had been collected by the University from students at the Junior College, a branch of the University of Tennessee located at Martin, as "fees, room rent, board and incidentals."

The present action was instituted by the University of Tennessee against the bank and sureties on a bond executed by the bank to the University, to secure the University against loss of any "revenues and other public monies of and for the State of Tennessee" placed on deposit in said bank. The primary issue or controversy between the parties is whether the claim of the University for the deposit above described is a preferred claim.

The claim for preference is predicated upon the idea that the University of Tennessee is an agency of the State, and that property held and possessed by it is the property of the State, for the protection of which the State is entitled to preference and priority as an incident to its sovereignty. *Fidelity & Guaranty Co.* v. *Rainey,* 120 Tenn., 357; *Maryland Casualty Co.* v. *McConnell,* 148 Tenn., 656.

For the Receiver of the Peoples Bank it is primarily contended that the preference claimed should not be allowed because (1) the funds and property of the University of Tennessee are not held by the State in its sovereign capacity, but by a corporation, in the creation

of which the State divested itself of its sovereignty, in so far as the property held by such corporation is concerned; and (2) the proceeds of the bonds issued by Weakley County, constituting the greater part of the deposit, were not the property of the State nor of the University, but were the property of the county, in the possession of the University as an agent of the county for expenditure.

The University of Tennessee was incorporated by the State of Tennessee in 1807, under the name of "Trustees of East Tennessee College." Scott's Revision, page 1047. The name of the corporation was changed to "The University of Tennessee" by an Act of March 11, 1879. The corporation is managed and controlled by a Board of Trustees, the method and manner of whose appointment have been changed from time to time. By the Acts of 1909, Chapter 48, it is provided that the Board of Trustees shall be composed of the Governor, the Superintendent of Public Instruction, the Commissioner of Agriculture, the President of the University, and twelve members, appointed by the Governor, subject to confirmation by the Senate.

Various Statutes have been enacted, providing for the control and management of the University. Students who are citizens of the State are admitted without tuition. An appropriation from the current revenue of the State is made for the support and maintenance of the institution, supplemented from time to time by appropriations of large sums for permanent improvement and expansion. The University has received funds from the Government of the United States from time to time, appropriated to the State of Tennessee for the use of the

University.   Several gifts from individuals have also been received by the University.

*(1)*   In *Maryland Casualty Co.* v. *McConnell, supra,* it was held by this Court that money acquired by the State for school purposes is acquired for a governmental purpose and is held by the State in its sovereign capacity.   It was further held therein that the identity of the fund is not lost, nor the nature of the State's title changed, by the deposit thereof in a bank at interest.

*(2)*   In view of the rulings made in *Maryland Casualty Co.* v. *McConnell, supra,* and in *Fidelity & Guaranty Co.* v. *Rainey, supra,* there would be no doubt but that the property devoted by the State to the establishment and maintenance of the University of Tennessee would be entitled to the protection of the preference and priority arising from the State's sovereignty, but for the interposition of the corporation in which legal title is vested.

*(3)*   In *Fields* v. *Wheatley,* 1 Sneed (33 Tenn.), 351, the preference arising from sovereignty was claimed for debts owing to the Bank of Tennessee, a State institution, exclusively owned and controlled by the State.   The Court held that the preference could not be sustained because the property of the bank was not held by the State in its sovereign character.   In so holding the Court said:

"In creating such a corporation, the State has invested it with none of its rights or prerogatives, none of its powers or incidents of sovereignty.; but has, in this respect, placed it upon the same footing as other corporate bodies, and the same principles are applicable to it.   In assuming to carry on the business and to exercise the functions of banking, the government, thus far, in the

language of Chief Justice MARSHALL, divests itself of its sovereign character, and takes that of a private citizen, or corporation.   Hence, the corporation, though belonging exclusively to the State, is subject to be sued, is within the operation of the Statute of Limitations, and in the collection of its debts can assert no priority or right over other creditors.   9 Wheat. 904; 3 McCord, 377; 6 Ala. (N. S.) 814; 2 Pet. 323; 8 Watts, 316.''

In *White* v. *Nashville & Northwestern Railroad Co. et al.,* 7 Heiskell (54 Tenn.), 518, 546, 547, the same conclusion was reached with regard to the property of a railroad corporation, taken over by the State to secure an indebtedness, and operated by the State.   In that case the Court said: ''In becoming a common carrier, or a corporator, or a partner in a railway company, the State has sunk the right and dignity of the sovereign to a level with those of the citizen, and in coming to litigate those rights in her courts, her controversy can only be treated as one between man and man.''

The holding of this Court in the two cases just cited was founded, not upon the fact that the State had created a corporation as an agency for the possession and management of a portion of its property, but upon the nature and character of the corporation organized, as evidenced by its purpose and the kind and character of business transacted by it.

It is obvious that the University of Tennessee, as a corporation, is not of the character of the corporations involved in *Fields* v. *Wheatley, supra,* and *White* v. *Nashville & Northwestern Railroad Co. et al., supra.*   In *Trustees of Carrick Academy* v. *Clark et al.,* 112 Tenn., 483, this Court considered the legal result of the creation by the State of a corporation styled ''The Trustees of

Carrick Academy." This corporation was created by Chapter 31 of the Acts of 1806, and was given corporate powers similar to those possessed by the University of Tennessee. The corporation was one of a number of similar corporations, created in that period of the history of this State, of which this Court, in the case cited, said:

"What, then, were these corporations? We have no doubt that the legislature creating them supposed them to be, as well as subsequent legislatures in dealing with them assumed, they were mere educational agencies of the State to accomplish the design foreshadowed by the condition in the cession agreement already referred to. The history of the legislation with regard to them shows this clearly."

It is stipulated in the record that, while this suit is brought in the name of the University of Tennessee, "the State of Tennessee shall be treated as a party to this cause for all purposes for which it is necessary for it to be a party." In view of this stipulation, we think the claim of preference must be considered as if asserted by the State, for the use of the University.

The holding of *Fidelity & Guaranty Co.* v. *Rainey,* *supra,* that the preference or priority, arising from sovereignty, cannot be asserted by a county or municipal government, has no application here. The holding seems to be founded upon the idea that the preference is an incident of sovereignty which cannot be split up or divided among the several subordinate governmental agencies of a State. The University of Tennessee was not created for the benefit of a particular section of the State, and the property intrusted to it by the State, is

devoted to the use of the entire public, in the perform-
ance by the State of a governmental function.

(4) We are of the opinion that the State, and the
public represented by it, must be considered as the own-
er of property held by the University, and that the sov-
ereign character of the State's ownership is not changed
by the creation of the corporation, as a convenient means
through which the State exercises the strictly governmen-
tal function of educating the youth among its citizens.
We are not able to find that the State has lost or di-
vested itself of any element of sovereignty in the crea-
tion of this corporation which is subject to the will of the
legislative branch of the State Government in every
particular, and the only purpose of which is to perform
a governmental function.

(5) Nor can we sustain the view that the proceeds
of the bonds delivered to the Trustees of the University
by Weakley County, included in the deposit, can be con-
sidered as the property of the county rather than of the
University or the State.

The Junior College, of the University of Tennessee,
was established and located at Martin, in Weakley Coun-
ty, by the Public Acts of 1927, Chapter 9. Section 2 of
that Act provides for the acceptance by the State of cer-
tain grounds, buildings, and equipment, to be conveyed
"to the State in fee simple," and to be managed and
controlled by the Trustees of the University of Tennes-
see. By the Private Acts of 1927, Chapter 172, Weakley
County was authorized to issue and sell $100,000 of bonds
"for the purpose of assisting the State of Tennessee in
acquiring additional land, buildings, and equipment for
Tennessee Junior College at Martin." It is recited in
the preamble of this Act that the securing of the addi-

tional land, buildings, and equipment "will be of great benefit to the people of the State of Tennessee, and will be a direct and special benefit and advantage to the people of Weakley County," etc. Upon the issuance and sale of the bonds, the Act authorized the payment of the proceeds to "The Trustees of the University of the State of Tennessee." It was stipulated by the parties that said bonds were issued and sold, and that the money so obtained was paid by the county "to The Trustees of the University" and was first deposited in a bank at Knoxville, $30,000 of which were later transferred to the Peoples Bank for deposit, as above shown.

That the establishment of the Junior College in Weakley County was so far a county purpose as to authorize this contribution by the county, is clearly shown by the opinion of this Court in *Ransom* v. *Rutherford County,* 123 Tenn., 1. It does not follow, however, that the money so raised and contributed remained the property of the county, in any sense; nor can it be said that the State or the University was an agency of the county in expending such money. Upon delivery to the University Trustees, the proceeds of the bonds became the property of the State, devoted to the purpose of education, and particularly to the establishment and extension of the Junior College, all of which is primarily a State purpose. *Board of Education* v. *Shelby County,* 155 Tenn., 212; *State* v. *True,* 116 Tenn., 294; *Edmondson* v. *Board of Education,* 108 Tenn., 557; *Leeper* v. *State,* 103 Tenn., 500.

(6) It appears from the stipulation of facts, upon which the case was heard by the Chancellor, that the bond executed by the bank and sureties, was executed for the purpose of obtaining and securing the particular deposit

involved in this suit. What we have said hereinabove is clearly indicative of our conclusion that the deposit was a deposit of "public monies of and for the State of Tennessee," within the contemplation of the parties, and therefore covered by the terms of the bond.

The Chancellor decreed that the Receiver and the Peoples Bank pay the deposit of the University as a preferred claim, in preference to any unsecured general creditors. Decree was given against the sureties on the bond "for any deficit there may be after exhausting complainant's said priority." The University assigns as error that the Chancellor should have awarded a decree against the principal and the sureties jointly, so that complainant might have execution against the sureties without awaiting the result of execution against the Receiver. It is out conclusion that the Chancellor did not abuse his discretion in framing his decree as above set out, and the decree of this Court will follow that of the Chancellor in that regard.

(7) The bond executed by the bank and the defendant sureties, provided also that in the event of suit thereon the bank would "pay the amount of such reasonable attorneys' fees as the University of Tennessee may incur, or pay for the prosecution of said suit or suits." The Chancellor fixed the fee of complainant's solicitors at $2,000 and rendered a decree therefor "against the defendant bondsmen." On appeal the bondsmen have assigned as error that the Chancellor should have rendered a decree for the fee of complainant's solicitors against the bank, as well as against the sureties on the bond. This assignment of error of the bondsmen will be sustained, and the decree of the Chancellor will be so

modified as to provide that the fee of $2,000 shall be paid by the bank as principal, and by the defendant bondsmen as sureties, but not to constitute a preferred claim in the distribution of the assets of the bank.

(8) If all or any part of this sum is paid by the defendant bondsmen, they shall be entitled to file their claim with the Receiver in the amount so paid by them as an unsecured debt owing to them by the bank.

With the exception of the modification just stated, the decree of the Chancellor will be in all things affirmed. The costs of this Court will be paid by the Receiver.