William LONG and Patricia M. Long, his wife, Plaintiffs-Appellants,

v.

Dr. John RICHARDSON, acting President of Memphis State University, et al., Defendants-Appellees.

No. 74–1992.

United States Court of Appeals, Sixth Circuit.

Argued June 2, 1975.

Decided Oct. 24, 1975.

441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973), and *Kelm v. Carlson,* 473 F.2d 1267 (6th Cir. 1973).

In this suit for money judgment, plaintiffs were met at the threshold by a motion to dismiss on grounds of the Eleventh Amendment. The United States District Judge granted the motion to dismiss, relying upon *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), and *Jordon v. Gilligan,* 500 F.2d 701 (6th Cir. 1974), *cert. denied,* 421 U.S. 991, 95 S.Ct. 1996, 44 L.Ed.2d 481 (1975).

As in *Vlandis v. Kline, supra,* and in *Kelm v. Carlson, supra,* this case is filed not against Memphis State University, but against particular officials of that institution. But since these plaintiffs had graduated from law school before filing this suit, it is clear that the suit is solely for money damages. Additionally, since Memphis State University is created by and is a part of the State of Tennessee, and these defendants are not charged with acting other than in their official capacities, the judgment, if entered, would be paid out of state funds. See T.C.A. § 49–3215 (Supp.1974).

C. M. Murphy, Memphis, Tenn., for plaintiffs-appellants.

Milton P. Rice, Atty. Gen. of Tenn., Nashville, Tenn., W. Henry Haile, Asst. Atty. Gen., for defendants-appellees.

Before WEICK, EDWARDS and CELEBREZZE, Circuit Judges.

EDWARDS, Circuit Judge.

Plaintiffs in this case are former law students at Memphis State University who are seeking judgment from the United States District Court in the Western District of Tennessee, Western Division, for out-of-State tuition fees paid by them while they were in school. Their complaint is filed under 42 U.S.C. § 1983 (1970). They assert violations of the equal protection and due process clauses of the United States Constitution and rely upon *Vlandis v. Kline,* 412 U.S.

Appellant points out and relies upon the fact that much the same situation prevailed in *Vlandis v. Kline, supra,* and in *Kelm v. Carlson, supra.* There are, however, two differences. In neither of the earlier cases was the Eleventh Amendment defense raised or discussed. And, more important, both were decided before *Edelman v. Jordan, supra.* In *Edelman* Justice Rehnquist, for a five-man majority of the United States Supreme Court, declared that "a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment." *Edelman v. Jordan, supra* at 663, 94 S.Ct. at 1356.

While, as the dissenters in *Edelman* pointed out, there are many reasons why the Supreme Court should not have adopted this construction and application, the fact is that the Supreme Court

did. And, of course, it is binding upon us.

Plaintiffs-appellants in this appeal also rely strongly upon *Soni v. Board of Trustees of University of Tennessee,* 513 F.2d 347 (6th Cir. 1975), *petition for cert. filed,* 44 U.S.L.W. 3069 (U.S. Aug. 5, 1975), where this court held that the State of Tennessee had waived the Eleventh Amendment defense as to the University of Tennessee. Our analysis of the applicable Tennessee statutes and case law convinces us that in contrast to the governing statutes concerning the University of Tennessee, there is no similar clear and specific waiver by Tennessee as to Memphis State University, and we therefore affirm dismissal of this complaint.

In *Soni, supra,* the case primarily relied on by appellants in this appeal, Chief Judge Phillips wrote:

Thus we are faced with the threshold question of whether this action against the University of Tennessee is a suit against the State within the meaning of the amendment. It is well established that even though a state is not named a party to an action, the eleventh amendment still may bar the action if it seeks "to impose a liability which must be paid from public funds in the state treasury . . . ." *Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347 (1974).

The educational institution now known as the University of Tennessee was incorporated by the General Assembly of Tennessee by Chapter 64 of the Acts of 1807 (Scott's Revision, Vol. 1, 1047 (1820)). The original charter provides that "The said trustees and their successors by the name aforesaid, may sue and be sued, plead and be impleaded, in any court of law or equity in this State or elsewhere."

The University is managed and controlled by the Board of Trustees, whose members include the Governor, the Commissioners of Agriculture and of Education, the President of the University, the Executive Director of the Higher Education Commission, and seventeen other members appointed by the Governor and subject to confirmation by the Tennessee Senate. T.C.A. §§ 49–3301 to –3303. The Board is empowered to borrow money and to issue bonds, which do not thereby become obligations of the State of Tennessee. T.C.A. §§ 49–3501 to –3510. The University receives income from many sources in addition to the substantial annual appropriations from the Tennessee Legislature.

In *University of Tennessee v. Peoples Bank,* 157 Tenn. 87, 6 S.W.2d 328 (1928), the Supreme Court of Tennessee held that a claim of the University was entitled to preference in a receivership proceeding for the liquidation of an insolvent bank. The Supreme Court said:

We are of the opinion that the state, and the public represented by it, must be considered as the owner of property held by the University, and that the sovereign character of the state's ownership is not changed by the creation of the corporation as a convenient means through which the state exercises the strictly governmental function of educating the youth among its citizens. We are not able to find that the state has lost or divested itself of any element of sovereignty in the creation of this corporation which is subject to the will of the legislative branch of the state government in every particular, and the only purpose of which is to perform a governmental function. Id. at 95, 6 S.W.2d at 330.

We have been unable to find any case discussing the University's status under the eleventh amendment. There are, however, many federal cases from other circuits holding other state colleges and universities to be state instrumentalities that enjoy the protection of the eleventh amendment. *See, e. g., Brennan v. University of Kansas,* 451 F.2d 1287, 1290 (10th Cir. 1971); *Williams v. Eaton,* 443 F.2d 422, 427–28 (10th Cir. 1971) (Universi-

ty of Wyoming); *Walstad v. University of Minnesota Hosps.,* 442 F.2d 634, 641–42 (8th Cir. 1971); *Board of Trustees of Arkansas A & M College v. Davis,* 396 F.2d 730 (8th Cir.), cert. denied, 393 U.S. 962, 89 S.Ct. 401, 21 L.Ed.2d 375 (1968); *Hamilton Mfg. Co. v. Trustees of State Colleges in Colorado,* 356 F.2d 599 (10th Cir. 1966); *Scott v. Board of Supervisors of Louisiana State University,* 336 F.2d 557 (5th Cir. 1964); *Board of Regents of the University of Nebraska v. Dawes,* 370 F.Supp. 1190 (D.Neb.1974). In addition, two district courts in this circuit have reached essentially the same conclusion. *Depperman v. University of Kentucky,* 371 F.Supp. 73, 77 (E.D. Ky.1974); *Huckins v. Board of Regents of University of Michigan,* 263 F.Supp. 622 (E.D.Mich.1967).

This line of authority, of course, does not control the present case. Each state university exists in a unique governmental context, and each must be considered on the basis of its own peculiar circumstances. For example, in the *Walstad* and *Scott* cases, *supra,* the state constitutions apparently contained provisions specifically extending state immunities to the universities. No such provision appears in the Tennessee Constitution. In addition, a federal district court recently scrutinized three state-related universities and concluded that they were not state instrumentalities. *Samuel v. University of Pittsburgh,* 375 F.Supp. 1119 (W.D.Pa.1974), appeal dismissed for want of an appealable order, 506 F.2d 355 (3d Cir. 1974) (University of Pittsburgh, Temple University, Pennsylvania State University).

We are uncertain whether the University of Tennessee is a state instrumentality protected by the eleventh amendment. The record before us contains little data on the University's financial relationship with the State of Tennessee, and the Tennessee cases and statutory materials do not compel a conclusion one way or the other.

Assuming, without deciding, that this action is a suit against the State within the meaning of the eleventh amendment, we believe that Tennessee has waived the immunity by consenting to suits against the University of Tennessee. As noted above, the University's original charter provides that it may "sue and be sued, plead and be impleaded, in any court of law or equity in this State or elsewhere." We are not unmindful that a waiver of a constitutional right must appear clearly and may not be lightly inferred. *Edelman v. Jordan,* 415 U.S. 651, 673, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). For example, it seems generally agreed that a state's consent to be sued in its own courts does not necessarily imply consent to be sued in federal court. *See Williams v. Eaton,* 443 F.2d 422, 428 (10th Cir. 1971); *Scott v. Board of Supervisors of Louisiana State University,* 336 F.2d 557, 558 (5th Cir. 1964). We are also aware that when a "public instrumentality is created with the right 'to sue and be sued' that waiver of immunity in the particular setting may be restricted to suits or proceedings of a special character in the state, not the federal courts." *Petty v. Tennessee-Missouri Bridge Comm'n,* 359 U.S. 275, 277, 79 S.Ct. 785, 787, 3 L.Ed.2d 804 (1959); *see Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 465–66 & n. 8, 65 S.Ct. 347, 89 L.Ed. 389 (1945); *Board of Regents of the University of Nebraska v. Dawes,* 370 F.Supp. 1190, 1193 (D.Neb.1974).

In this case, however, the University of Tennessee was created, only a few years after the ratification of the eleventh amendment, with the unrestricted right to sue and to be sued "in any court of law or equity." We see no indication that this sweeping consent was intended to be limited to suits brought in the state courts. To the contrary, by its terms the consent is general and purports to apply to any court and to any type of suit.

Article 1, § 17 of the Constitution of Tennessee provides that "Suits may be brought against the State in such manner and in such courts as the Legislature may by law direct." This language originated with the State's first Constitution of 1796 and was carried forward into the Constitutions of 1834 and 1870. The Legislature of Tennessee has consented that the University may sue and be sued. The power to sue grants to the University the right to recover a money judgment. Consent to be sued inescapably subjects the University to the hazard of having a money judgment rendered against it.

We, therefore, conclude that the eleventh amendment does not bar the money judgment against the University in this case.

*Soni v. Board of Trustees of University of Tennessee, supra,* at 351–353.

Thus *Soni* points out that each state university must be considered separately and the Eleventh Amendment waiver is found in the clear and explicit language of the University of Tennessee's charter. We find no comparable language applicable to Memphis State University.

Appellants' principal reliance as to the Eleventh Amendment waiver claim is planted upon T.C.A. § 49–3239 (Supp. 1974):

*49–3239. Board of regents—Powers.*—The board shall have the power to select and employ the chief executive officers of the institutions upon the recommendation of the chief executive officer of the system and to confirm the appointment of administrative personnel, teachers, and other employees of each state institution and to fix their salaries and terms of office; to prescribe curricula and requirements for diplomas and degrees; to approve the operating and capital budgets of each of the universities and community colleges under its control, and otherwise set policies for their fiscal affairs; to establish policies and regulations regarding the campus life of the institutions, including but not limited to the conduct of students, student housing, parking, and safety; and to assume general responsibility for the operation of the institutions, delegating to the chief executive officer of the respective institutions such powers and duties as are necessary and appropriate for the efficient administration of the institution and its programs. The board shall have the power to receive donations of money, securities, and property from any source on behalf of the institutions named above, which gifts shall be used in accordance with the conditions set by the donor. The board shall have the power to purchase land subject to the terms and conditions of state regulations, to condemn land, to erect buildings and equip them for the institution subject to the terms and conditions of legislative appropriations, and the board shall be vested with title to property so purchased or acquired. The title to property held on behalf of the above named institutions by the state board of education shall be transferred to the board on the effective date of transfer of responsibility for the government of the above named institutions. The board shall have such other powers, not otherwise prescribed by law, as are necessary to carry out the provisions of §§ 49–3236—49–3244, and it is the expressed legislative intent and purpose to vest similar and comparable responsibility and authority in the board as is authorized for the board of trustees of the University of Tennessee. [Acts 1972 (Adj. S.), ch. 838, § 4.]

We note herein a legislative intent "to vest similar and comparable responsibility and authority . . . as is authorized for the University of Tennessee." We recognize that the terminology is broad and that an argument may be advanced that at least the word "responsibility" should be read as including that of being liable for suit in federal court. We have finally concluded, however, that we must reject this argument.

■ First, as we pointed out in *Soni,* the waiver of a constitutional right must be "clear." In *Edelman v. Jordan, supra,* the Supreme Court said:

In deciding whether a State has waived its constitutional protection under the Eleventh Amendment, we will find waiver only where stated "by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction." *Murray v. Wilson Distilling Co.,* 213 U.S. 151, 171 [29 S.Ct. 458, 464, 53 L.Ed. 742] (1909). We see no reason to retreat from the Court's statement in *Great Northern Insurance Co. v. Read,* 322 U.S. [47] at 54 [64 S.Ct. 873, 877, 88 L.Ed. 1121] (footnote omitted):

"[W]hen we are dealing with the sovereign exemption from judicial interference in the vital field of financial administration a clear declaration of the state's intention to submit its fiscal problems to other courts than those of its own creation must be found."

*Edelman v. Jordan, supra,* 415 U.S. at 673, 94 S.Ct. at 1360.

We cannot conclude that the Tennessee legislature by use of the terms "responsibility" and "authority" *clearly* meant to say in relation to the governing body of Memphis State University that "they may sue and be sued, plead and be impleaded in any court of law or equity in this state or elsewhere."

Second, there is settled Tennessee case law which strongly contradicts this interpretation. In *Applewhite v. Memphis State University,* a plaintiff brought a libel suit against the University and its press which was a separate corporation. The Tennessee Supreme Court held that the University was protected by the doctrine of government immunity, but that the separate Memphis State University Press, Inc., was not. The opinion said in part:

Memphis State University is an institution to which the doctrine of sovereign immunity applies and no statute authorizes this suit. Therefore, the trial judge was correct in sustaining the motion to dismiss filed by Memphis State University on the plea of governmental immunity.

*Applewhite v. Memphis State University,* 495 S.W.2d 190, 196 (Tenn.1973).

■ We recognize, of course, that the right to sue in a federal court is different from the right to sue in a state court, and that the former is governed by federal rather than state law. *See Petty v. Tennessee-Missouri Bridge Commission,* 359 U.S. 275, 79 S.Ct. 785, 3 L.Ed.2d 804 (1959). But *Applewhite* is a square state adjudication by the state's highest court that no Tennessee statute constitutes a waiver of government immunity as to a state court suit against Memphis State University. The general language which appellants rely upon for waiver of the Eleventh Amendment would apply equally to waiver of government immunity for purposes of state court suit. Therefore, the *Applewhite* adjudication must be read as applicable to both. We have noted above that an Eleventh Amendment waiver must be determined by federal law. But a state supreme court interpretation of its own state law is at least highly persuasive.

The judgment of the District Court is affirmed.