**Paul WEISBORD, Plaintiff,**

v.

**MICHIGAN STATE UNIVERSITY, Defendant.**

**No. G76–475 CA5.**

United States District Court, W. D. Michigan, S. D.

Aug. 26, 1980.

Paul Weisbord, pro se.

Leland W. Carr, Jr., Lansing, Mich., for defendant.

## OPINION AND ORDER

BENJAMIN F. GIBSON, District Judge.

This is a civil rights action wherein plaintiff alleges unlawful discrimination in employment based upon sex and/or sex coupled with race. Plaintiff, a white male, sought a position with defendant as Assistant Director of Women's Programs in February, 1975. The position was filled by a woman. After pursuing the appropriate administrative remedies plaintiff instituted the present lawsuit.

Plaintiff now seeks to amend and supplement his original complaint to add legal theories for relief, to add parties defendant, and to add similar claims concerning subsequent applications for the positions of Di-

rector and Assistant Director of Women's Programs. Defendant has responded to plaintiffs motion with a motion to dismiss, or, in the alternative, for summary judgment. Defendant's motion appears to address both the theories of the original complaint and those of the proposed amended and supplemental version. It is therefore logical to address plaintiff's motions first and then proceed to discuss the one offered by the defendant.

## I. MOTIONS TO AMEND AND SUPPLEMENT

 Amended and supplemental pleadings are governed by Rule 15 of the Federal Rules of Civil Procedure, which reads in pertinent part as follows:

## AMENDED AND SUPPLEMENTAL PLEADINGS

**(a) Amendments.** A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within 20 days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be the longer, unless the court otherwise orders.

. . . . .

**(c) Relation Back of Amendments.** Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him,

the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

The delivery or mailing of process to the United States Attorney, or his designee, or the Attorney General of the United States, or an agency or officer who would have been a proper defendant if named, satisfies the requirement of clauses (1) and (2) hereof with respect to the United States or any agency or officer thereof to be brought into the action as a defendant.

**(d) Supplemental Pleadings.** Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit him to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented. Permission may be granted even though the original pleading is defective in its statement of a claim for relief or defense. If the court deems it advisable that the adverse party plead to the supplemental pleading, it shall so order, specifying the time therefor.

As amended Jan. 21, 1963, eff. July 1, 1963; Feb. 28, 1966, eff. July 1, 1966. Liberality prevails in permitting amendments to the pleadings. Unless a proposed amendment would result in undue prejudice to the opposing party, has been unduly delayed, has not been offered in good faith, or would be futile, leave to amend should be granted. The decision to permit amendment is within the Court's discretion, but it has been considered an abuse of discretion and reversible error to deny leave to amend unless there is a good reason for the denial. *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

 Liberality is the rule with regard to supplemental pleadings as well. The

purpose of a supplemental pleading is to set forth new facts that have occurred since the filing of the original pleading and that affect the controversy and the relief sought. Its function is to bring the action "up to date."

Neither defendant University or proposed defendants Board of Trustees and President have asserted that the grant of plaintiff's motions to amend and supplement would result in undue prejudice or that there has been undue delay or bad faith in their filing. To the extent that defendant and proposed defendants assert the futility of the amended and supplemental claims their arguments will be considered in the Court's discussion of their motion for dismissal or summary judgment below.

■ Defendants do argue, however, that plaintiff's new theories for recovery are barred by the statute of limitations. Plaintiff, on the other hand, relies on Rule 15(c) governing the relation back of the proposed amendments, and argues that because the new theories "arose out of the conduct, transaction, or occurrence set forth . . in the original pleading, the amendment[s] relate[ ] back to the date of the original pleading." Fed.R.Civ.P. 15(c). Defendant and proposed defendants were made aware of the fact situation upon which the amended complaint is based by the original complaint. The fact situation underlying the new theories is the same as that originally plead. Proposed defendant president was served with the original complaint at the time this lawsuit was commenced. In view of these factors this Court holds that plaintiff's claims relate back and are not barred by the statute of limitations. *See, e. g., Hageman v. Signal L. P. Gas, Inc.,* 486 F.2d 479 (6th Cir. 1973).

Plaintiff's motions to amend and supplement are granted. The Clerk of the Court shall file plaintiff's revised "First Amended and Supplemental Complaint" that was attached to plaintiff's supplemental motion to amend and supplement filed April 28, 1980. Pursuant to Rule 15(d) defendants are ordered to answer said complaint within 20 days of the filing of this opinion. Service of process shall stand as complete inasmuch as it appears that no prejudice will befall defendants as a consequence.

## II. MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

Plaintiff puts forth many theories for recovery. In addition to his claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* he seeks relief pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.;* Executive Order 11246; U.S. Const., amend. XIII; U.S. Const., amend. XIV; 42 U.S.C. § 1981; 42 U.S.C. § 1983; U.S. Const., amend. I; Mich.Const., art. I § 2; Mich. Const., art. I § 17; the Michigan Fair Employment Practices Act, Mich.Comp.Laws Ann. § 423.301 *et seq.;* and the Elliott-Larsen Civil Rights Act, Mich.Comp.Laws Ann. § 37.2101 *et seq.*

■ Defendant has moved to dismiss the complaint for "failure to state a claim upon which relief can be granted" pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Court's inquiry at this point, before the reception of any evidence by affidavit or admission, is merely whether the challenged complaint sets forth sufficient allegations to make out the elements of a right to relief. In making this determination, the allegations in the complaint are taken at "face value," *California Motor Transit Co. v. Trucking Unlimited,* 404 U.S. 508, 515, 92 S.Ct. 609, 614, 30 L.Ed.2d 642 (1972), and should be construed favorably to the plaintiff, *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). "[W]ell pleaded facts are taken as true, and the complaint is construed liberally in favor of the party opposing the motion." *Davis H. Elliot Co. v. Caribbean Utilities Co.,* 513 F.2d 1176, 1182 (6th Cir. 1975). All reasonable inferences that might be drawn from the pleading must be indulged. *Fitzke v. Shappell,* 468 F.2d 1072, 1076 n.6 (6th Cir. 1972).

The Sixth Circuit has made it clear that dismissals of civil rights claims will be scrutinized with special care. *Westlake v. Lucas,* 537 F.2d 857, 858 (6th Cir. 1976). In this regard the District Courts have been

given a clear directive that "[a] case brought under the Civil Rights Act should not be dismissed at the pleading stage unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim." *Lucarell v. McNair*, 453 F.2d 836, 838 (6th Cir. 1972).

With this standard in mind this opinion will proceed to address defendants' arguments against each of plaintiff's claims.

## A. TITLE VII

Defendants set forth three arguments for dismissal of plaintiff's Title VII claims. First, that plaintiff has not properly plead a violation of Title VII; second, that gender is a bona fide occupational qualification (BFOQ) for the positions that plaintiff sought; and third, that plaintiff's "many job applications for Women's Program positions have been litigated before the Michigan Department of Civil Rights and Equal Employment Opportunity Commission with rejections in each instance."

As to the sufficiency of the pleading to state a Title VII claim defendant argues: "It is insufficient for plaintiff to attach his law school transcript and then blatantly conclude in his prolix pleading that he is the best qualified of all applicants." If that was all that plaintiff had done in this case it indeed might have been insufficient to state a claim. The complaint, however, does much more.

In the usual case claiming unlawful discrimination against an individual plaintiff a prima facie case requires plaintiff to establish: 1) that he is a member of the group allegedly discriminated against, 2) that he applied and was qualified for the job for which the defendant was seeking applicants, 3) that, although qualified, he was rejected, and 4) that after plaintiff was rejected the job remained open and applicants were still being sought or considered. *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Plaintiff's complaint clearly alleges a prima facie case under this standard.

Another way to make out a claim under Title VII is set out in *Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). Pursuant to the *Griggs* test a plaintiff, usually representing a class, must assert that a particular policy of the defendant's, frequently neutral on its face, has a discriminatory effect. Viewing the pleadings liberally the Court can not say for a certainty that plaintiff has not stated a prima facie claim under *Griggs*. *See Westlake v. Lucas*, 537 F.2d 857 (6th Cir. 1976); *Lucarell v. McNair*, 453 F.2d 836 (6th Cir. 1972).

A third way to state a claim under Title VII is to allege overt intentional discrimination. Plaintiff has quite clearly made sufficient allegations to support this Title VII theory.

Defendant next argues that gender is a BFOQ for the positions that plaintiff has sought, citing its Affirmative Action Plan, which "recognizes women to be among those groups that have been historically victimized through discriminatory practices," and *United Steelworkers of America v. Weber*, 443 U.S. 193, 99 S.Ct. 2721, 61 L.Ed.2d 480 (1979). The short answer to this argument is that it presents issues of material fact that are beyond the scope of a motion for dismissal or for summary judgment. It is possible that after the facts are presented and the record fully developed the Court may find this to be the case; it is also possible that the Court will reject the contention. It is, however, premature for the Court to decide what is essentially a factual matter at this stage of the proceeding.

With respect to defendant's third argument, directed at prior administrative determinations against plaintiff on these claims, the rule is that plaintiff is entitled to a trial *de novo* in federal court. The Supreme Court made this clear in *McDonnell Douglas v. Green*, 411 U.S. 792, 798–99, 93 S.Ct. 1817, 1822, 36 L.Ed.2d 668 (1973), as follows:

> The Act does not restrict a complainant's right to sue to those charges as to which the Commission has made findings of reasonable cause, and we will not engraft on the statute a requirement which may in-

hibit the review of claims of employment discrimination in the federal courts. The Commission itself does not consider the absence of a "reasonable cause" determination as providing employer immunity from similar charges in a federal court, 29 CFR § 1601.30, and the courts of appeal have held that, in view of the large volume of complaints before the Commission and the nonadversary character of many of its proceedings, "court actions under Title VII are de novo proceedings and . . . a Commission 'no reasonable cause' finding does not bar a lawsuit in the case." *Robinson v. Lorillard Corp.*, 444 F.2d 791, 800 (CA4 1971); *Beverly v. Lone Star Lead Construction Corp.*, 437 F.2d 1136 (CA5 1971); *Flowers v. Local 6, Laborers International Union of North America*, 431 F.2d 205 (CA7 1970); *Fekete v. U. S. Steel Corp.*, 424 F.2d 331 (CA3 1970).

### B. TITLE IX

Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a) reads, in pertinent part, as follows:

No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . .

The question of whether this provision creates a private cause of action in an employment context where an employer is an educational institution has been decided in the negative in this Circuit and every other Circuit that has considered the issue to date. *Romeo Community Schools v. HEW*, 600 F.2d 581 (6th Cir.), *cert. denied*, 444 U.S. 972, 100 S.Ct. 467, 62 L.Ed.2d 388 (1979); *accord, Seattle University v. HEW*, 621 F.2d 992 (9th Cir. 1980); *Junior College District of St. Louis v. Califano*, 597 F.2d 119 (8th Cir. 1979); *Islesboro School Committee v. Califano*, 593 F.2d 424 (1st Cir. 1979). The rationale for these decisions is that the above provision was intended to benefit students and, perhaps, those teachers engaged in special activity or research being funded by the federal government,

and should not be construed to extend to employees, qua employees absent such a special relationship to federal funding. *Id.*

Plaintiff does not disagree that such is the state of the law, but seeks to avoid dismissal by arguing that the discrimination he has alleged affects educational opportunities of students adversely, and that he has a sufficient personal stake in the outcome to have standing to assert the rights of those students. His complaint, however, makes absolutely no reference to any effect, adverse or otherwise, upon rights secured to students under Title IX or any other legal theory. On the contrary, each count of plaintiff's complaint claims only that the allegations amount to "violations of rights secured *to Plaintiff* by Title IX . . ." (emphasis added). Thus, even assuming for purposes of argument that plaintiff would be a proper party to assert the rights of students, no violation of students' rights has been alleged.

Plaintiff's claims asserting violations of Title IX, therefore, shall be dismissed.

### C. EXECUTIVE ORDER 11246

Although plaintiff's complaint claims violations of rights secured to him by Executive Order 11246, plaintiff indicated at oral argument that he no longer claimed to have a private cause of action under Executive Order 11246. In view of plaintiff's own abandonment of the theory, plaintiff's claims asserting violations of Executive Order 11246 should also be, and hereby are, dismissed.

### D. SECTION 1983 AND THE DIRECT FOURTEENTH AMENDMENT CLAIM

The Civil Rights Act of 1871, 42 U.S.C. § 1983, reads as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be

liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress. . . .

The defense has asserted as a grounds for dismissal that Michigan State University or the Board of Trustees of Michigan State University /aka/ Michigan State University as the amended complaint is captioned, is not a "person" within the meaning of this section. The President of Michigan State University is also named as a party defendant in the current version of plaintiff's complaint.

▮ In *Monell v. New York City Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the United States Supreme Court, after an exhaustive review of the legislative history of section 1983, reversed its earlier decision in *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), and held that local governments were intended to be included among the "persons" to which section 1983 applies. While the Supreme Court was not faced with the issue of whether agencies of a state are "persons," the legislative history and the rationale of that opinion is highly persuasive as to state agencies as well. This Court is of the opinion that these defendants are "persons" within the meaning of 42 U.S.C. § 1983. Plaintiff's § 1983 claims, therefore, will not be dismissed on this basis.

Plaintiff also pleads a direct cause of action for damages and other relief arising under the Fourteenth Amendment. Because the Court views the parameters of such a potential cause of action to be co–extensive with the section 1983 action in this case, and in light of the general principle of avoiding unnecessary decisions of constitutional issues, *Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 56 S.Ct. 466, 80 L.Ed. 688 (1936), the Court finds it unnecessary to rule on the viability of such an implied direct constitutional cause of action.

Defendants also raise the issue of Eleventh Amendment immunity from all but prospective relief. Because the Eleventh Amendment argument is directed at many other of plaintiff's theories as well, it will be addressed as a whole elsewhere in this opinion.

## E. SECTION 1981 AND THE DIRECT THIRTEENTH AMENDMENT CLAIM

Plaintiff alleges that defendants' actions constitute a violation of 42 U.S.C. § 1981, as well. That statute reads as follows:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

▮ It is clear from the case law that this statute provides a remedy for discrimination in the employment context. *E. g., McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976); *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). It is also well established that racial discrimination against whites as well as against non–whites is within the section's coverage. *McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976). The Supreme Court has also held, however, that this section is not addressed to issues of sex discrimination. *Runyon v. McCrary*, 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976).

As was the case with section 1983 and the Fourteenth Amendment claim, plaintiff's remedy under section 1981 is no less broad than any implied direct constitutional remedy under the Thirteenth Amendment. Therefore, pursuant to the policy of avoiding unnecessary decisions of constitutional law, *Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 56 S.Ct. 466, 80 L.Ed. 688 (1936), the Court declines to decide the existence of such a direct Thirteenth Amendment action.

Insofar as plaintiff's complaint on these theories is addressed to sex discrimination it

does not state viable claims for relief and must be dismissed. Because plaintiff also alleges a racial component to his discrimination charges, however, the complaint does state claims upon which relief can be granted, and to that extent defendants' motion must be denied.

### F. ELEVENTH AMENDMENT IMMUNITY

Defendants argue that the Court lacks jurisdiction to hear plaintiff's claims because the Eleventh Amendment is a bar. The Eleventh Amendment reads as follows:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S.Const., amend. XI.

■ By its terms the Eleventh Amendment bars any action in law or in equity against one of the States by the citizens of another State, or citizens of another country. *Missouri v. Fiske,* 290 U.S. 18, 54 S.Ct. 18, 78 L.Ed. 145 (1933). The amendment has been extended through interpretation, however, to confer immunity in actions by the defendant state's own citizens as well. *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). The Supreme Court has frequently said that suits for retrospective monetary relief are barred by the amendment, *e. g., Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), *Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978), although the amendment has been held not to bar a suit for prospective relief against state officials, *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

■ Plaintiff has technically not named any state officials as defendants, having merely named the offices or titles held by those officials. In view of the liberal pleading requirements of the Federal Rules, *see,* Fed.R.Civ.P. 1, and the standards for dismissing a civil rights action in particular, *Westlake v. Lucas,* 537 F.2d 857 (6th Cir. 1976); *Lucarell v. McNair,* 453 F.2d 836 (6th Cir. 1972), the Court will construe the complaint as one against the state officials who constitute the Board of Trustees and the President of Michigan State University in their official capacities. To do otherwise would be to exalt form over substance, and accomplish no more than a delay in the lawsuit inasmuch as plaintiff would be free to amend his complaint to name these specific individuals by name if the action was dismissed on this narrow technical ground.

■ This holding does not end the inquiry, however, for to the extent that state officials are sued for retrospective relief they are clothed with the State's Eleventh Amendment immunity. *E. g., Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Unless the state is found to have waived its Eleventh Amendment immunity, *e. g., Soni v. Board of Trustees of University of Tennessee,* 513 F.2d 347 (6th Cir. 1975), *cert. denied,* 426 U.S. 919, 96 S.Ct. 2623, 49 L.Ed.2d 372 (1976), or Congress has specifically abrogated that immunity, *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), a suit for retrospective relief against state officials would be barred.

■ In *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), the Supreme Court held that in ratifying the Fourteenth Amendment the states relinquished their Eleventh Amendment immunity to the extent that section 5 of the Fourteenth Amendment grants to the Congress the "power to enforce, by appropriate legislation, the provisions of this article." Thus where Congress is found to have expressly abrogated the states' Eleventh Amendment immunity there is no bar to retrospective relief. Such an express abrogation has been found for actions under Title VII, *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), but found wanting in the legislative history of section 1983, *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). Nor does it appear that section 1981 was intended to abrogate Eleventh Amendment immunity. It is merely a general prohibition of discrimination on racial grounds containing no explicit abrogation of the states'

immunity as was found in Title VII. *See Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976).

Although the interface between the Eleventh Amendment and any implied cause of action directly pursuant to the Thirteenth and Fourteenth Amendments has not been explicitly defined in the case law, it would seem most consistent with the Supreme Court's reasoning in *Fitzpatrick* and *Quern* to hold that such a cause of action would be barred by the Eleventh Amendment. To hold otherwise would create the inconsistent and illogical result that the Thirteenth and Fourteenth Amendments are sufficient by themselves to constitute an abrogation of the Eleventh, but legislative remedies enacted to enforce the principles of those amendments do not so abrogate the Eleventh Amendment bar unless there appears a clear statement that the Congress so intended such an abrogation. *Fitzpatrick* stands for the proposition that the Fourteenth Amendment is a necessary element in the abrogation of the states' immunity, but is not sufficient. It is also necessary to find a clear statement of Congressional intent to create a remedy against a state. The Fourteenth Amendment creates Congressional power to act, but the courts must also find that Congress in fact exercised that power.

The possibility that the State of Michigan may have waived its Eleventh Amendment rights, and thereby consented to federal court jurisdiction against it, must also be addressed. In *Soni v. Board of Trustees of University of Tennessee*, 513 F.2d 347 (6th Cir. 1975), *cert. denied*, 426 U.S. 919, 96 S.Ct. 2623, 49 L.Ed.2d 372 (1976), the Sixth Circuit held that suits based on allegations of due process violations could be maintained against the University of Tennessee because it was found to have waived its immunity from suit. In reaching that conclusion the court set forth a test for determining the waiver of immunity that requires an examination of the particular circumstances of each university or agency involved. *See also, Long v. Richardson*, 525 F.2d 74 (6th Cir. 1975). The court concluded that because a waiver of constitutionally granted immunity cannot be inferred light-

ly, a court must look for clear and explicit language of waiver. *Soni v. Board of Trustees of University of Tennessee*, 513 F.2d at 352. Moreover, a federal court should examine state court interpretations of that language as highly persuasive, although not binding, on the issue.

The Sixth Circuit in *Soni* held that the University of Tennessee had waived its Eleventh Amendment immunity. The University's charter provided that "(t)he said trustees and their successors . . . may sue and be sued, plead and be impleaded, in any court of law or equity in this State or elsewhere." Although the appellate court recognized that a state's consent to be sued in its own courts did not necessarily imply consent to be sued in the federal court, it nevertheless held that the consent to be sued granted by the University of Tennessee was especially broad and not intended to be limited to state courts.

In fact, however, the *Soni* case exists as a unique holding. Other cases in this circuit involving the same issue of Eleventh Amendment immunity for state universities have ruled consistently that federal courts lack jurisdiction. *See, e. g., Martin v. University of Louisville*, 541 F.2d 1171 (6th Cir. 1976); *Long v. Richardson*, 525 F.2d 74 (6th Cir. 1975). In fact, this circuit has been very restrictive in finding waiver, even where clauses existed similar to that in *Soni*. With this standard in mind the Court finds no waiver of Eleventh Amendment immunity by the defendants.

As has previously been noted, in barring actions by citizens for the recovery of money from the treasuries of the various states, the Eleventh Amendment protects not only states as expressly named defendants, but also their officers, agents, and institutions which are part of the state function. *Mt. Healthy City Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

Michigan State University is a state institution of higher learning created by an act of the Michigan legislature. M.C.L.A. § 390.101, M.S.A. § 15.1121. It is maintained through appropriations from the

state legislature and is financially accountable to it. Michigan Constitution of 1963, Art. VIII, § 4. It is governed by a Board of Trustees, whose members are elected by the voters of the State of Michigan and serve without compensation. Michigan Constitution 1963, Art. VIII, § 5, M.C.L.A. § 390.103, M.S.A. § 15.1123. The faculty and President are charged with the responsibility, respectively, of passing and enforcing "all rules and regulations necessary to the government and discipline of the college and for the preservation of morals, decorum and health." M.C.L.A. §§ 390.113, 390.114, M.S.A. §§ 15.1133, 15.1134.

Nothing in the charter of Michigan State University states or implies that it is anything other than a state institution entitled to the privileges and immunities of the state or that an assessment against it would come from any source other than the treasury of the State of Michigan. There is no mention of any general power to sue or be sued in the laws governing Michigan State University, nor is there authority to the contrary in the decisions of the state courts in Michigan. Accordingly, plaintiff's attempt to secure money damages or other retrospective relief from defendants is precluded by the Eleventh Amendment except insofar as such relief is pursuant to Title VII. To the extent that retrospective relief is sought under any of the other theories discussed above they are hereby dismissed.

### G. THE VARIOUS STATE LAW CLAIMS

Defendants' motion does not address the substance of plaintiff's claims pursuant to the constitution and laws of the State of Michigan. Defendants merely point out that the Court has discretion to decline to exercise pendant jurisdiction as to those claims. The Court, in the interest of judicial economy, and in order to avoid piecemeal litigation will invoke its pendant jurisdiction to hear the various state claims.

### III. SUMMARY AND ORDER

In summary plaintiff's motions to amend and supplement his complaint and caption are hereby granted, and to the extent that such claims might otherwise be barred by the applicable statute of limitations such claims shall relate back to the date of original filing. Further, defendants are hereby ordered to answer plaintiff's "First Amended and Supplemental Complaint" within 20 days of the filing of this opinion.

Defendants' motion for dismissal or summary judgment is granted in part and denied in part. As to plaintiff's Title IX claim and plaintiff's claim pursuant to Executive Order 11246 the claims are hereby dismissed without prejudice. Plaintiff's claim of sex discrimination under 42 U.S.C. § 1981, and plaintiff's claims for retrospective relief pursuant to 42 U.S.C. § 1981, 42 U.S.C. § 1983, or directly pursuant to the Thirteenth and Fourteenth Amendments are hereby dismissed with prejudice. In all other respects defendants' motion is hereby denied.

IT IS SO ORDERED.