**Helen PIASCIK, Plaintiff,**

v.

**CLEVELAND MUSEUM OF ART, Defendant.**

**No. C76–155.**

United States District Court, N. D. Ohio, E. D.

Dec. 2, 1976.

Charles E. Guerrier, Barbara Kaye Besser, Jane M. Picker, Barbara H. Mitchell, Cleveland, Ohio, for plaintiff.

George M. Austin, Earl M. Leiken, Susan Jaros Stevens, Hahn, Loeser, Freedheim, Dean & Wellman, Cleveland, Ohio, for defendant.

## MEMORANDUM OF OPINION

MANOS, District Judge.

On February 17, 1976 plaintiff Helen Piascik, a woman, initiated an action charging the defendant Cleveland Museum of Art with rejecting her application for employment because of her sex in violation of 42 U.S.C. § 2000e, *et seq.*; 20 U.S.C. § 1681, *et seq.*[1] Plaintiff Piascik seeks a declaratory judgment pursuant to 28 U.S.C. §§ 2201–2202, injunctive relief, back pay, litigation costs including attorneys fees, and

---

1. The plaintiff charges that the defendant's alleged employment discrimination against her entitles her to an injunction and to recover damages based on 20 U.S.C. § 1681(a), which provides:

"No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ."

such other relief as the Court deems appropriate according to the power conferred upon it by 42 U.S.C. § 1988. Jurisdiction is invoked under 28 U.S.C. §§ 1343(3)(4), 1331(a), 2201, 2202; 42 U.S.C. § 2000e–5(f)(3). On November 4, 1976 plaintiff Piascik's case was tried to the Court which now grants final judgment in favor of the defendant on all of the plaintiff's claims.

## I.

## FACTS

In August, 1973 the Cleveland Museum of Art [Museum] desired to hire three security guards and listed these employment opportunities with the Ohio Bureau of Employment Services. In late September, 1973, the Museum developed two openings for night watchmen. Guards and watchmen perform the similar security function of guarding the Museum's valuable art treasures, however, guards' hours and working conditions differ from those of watchmen. The guards are generally assigned to specific posts within the Museum during the daytime when it receives visitors. Watchmen work at night, checking entrances to make sure that they are locked and securing the building from damage. On the morning of September 19, 1973 Robert Singleton began work in one of the guard positions, and on

---

Jurisdiction is properly invoked for this claim under 28 U.S.C. §§ 1343(4), 1331(a). Dr. Lee's testimony indicates that the Museum receives federal assistance for an educational program it operates for the East Cleveland school system, and it also operates library, slide, and teaching facilities for eighty to ninety Case Western Reserve University students, for which the Museum is paid. The Court is satisfied that the operation of the Museum qualifies as an "education[al] . . . activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Having established that § 1681(a) covers the defendant, the Court must determine whether § 1681(a), which contains no express private right of action, contains an implied private right of action. Arguably no such implied private right exists because § 1682 suggests administrative enforcement and § 1683 suggests judicial review of only such administrative enforcement actions. Furthermore, the legislative history of § 1681(a) reveals that it was enacted in the same bill which removed the specific exclusion of educational institutions from Title VII of the Equal Employment Opportunity Act. See, 1972 U.S.Code Cong.Admin. News 2462, 2511–12, 2566; and subsequent amendments discussed in 1974 U.S.Code Cong. Admin.News 6779, 6796. Based on this legislative history the defendant might have argued that Congress did not intend to create an implied private right of action to vindicate § 1681(a) claims, because it simultaneously amended Title VII to permit sex discrimination in employment suits brought against educational institutions. Therefore, the defendant could have argued that Congress intended §§ 1682, 1683 to be the only method of enforcing the prohibitions contained in § 1681. See, Cort v. Ash, 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26 (1975), where the court held that "In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. . . .

Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff."

The Court recognizes that § 1681(a) charges of sex discrimination in employment against defendants covered by § 1681(a) duplicates the express private remedy for such employment discrimination contained in Title VII, see, 42 U.S.C. § 2000e–5(b), (f). However, § 1681(a) renders unlawful many forms of sex discrimination in educational programs and activities. Section 1681(a), and the legislative history supporting it, express a powerful Congressional intent to eradicate sex discrimination in non-religious, non-military, co-educational programs, including, but certainly not limited to sex discrimination in employment in educational activities. See, U.S.Code Cong.News, supra. Without the recognition of a private cause of action under § 1681(a), individual litigants who suffered from non-employment related sex discrimination which violated the express prohibitions of § 1681(a), would be left with no remedy for the personal injury which they suffered to their education. Such a result would cripple Congress' effort to insure sexually equal educational opportunity in non-sectarian, non-military, co-educational programs. Thus recognition of an implied private right of action for vindicating violations of § 1681(a) is consistent with Congress' intent in enacting that provision, and must be recognized in the absence of an express statement by Congress that §§ 1682, 1683 comprise the exclusive means of enforcing the rights conferred by § 1681(a). This implied private right is implicitly recognized in Trent v. Perritt, 391 F.Supp. 171, 173 (S.D.Miss. 1975) where a male public high school student was permitted to argue that the school's hair length code violated his rights under § 1681(a). Of course since this Court has found that the plaintiff has not established that she was sexually discriminated against, she ultimately does not prevail on her well pleaded § 1681 claim.

the morning of September 21, 1973 Robert J. Hardy began work in the second guard position.[2] On the same morning, Friday, September 21, 1973, Wade Clark, who had applied for a guard position the previous May, was in the guard office talking to the Museum Guard Officer John Matyas about filling the last available guard position. Clark, who had seven years experience with the Western Reserve University Police and eight years experience as a guard with other employers and as a military policeman, was hired on the morning of September 21, and commenced work on Sunday, September 23.[3]

On September 21, 1973 plaintiff Piascik went to the Museum to interview for the job of security guard. She was told to apply for the job by Miss Catherine Gaethers, a social worker at St. Luke's Hospital, who thought the Museum had an opening for a guard. Mrs. Piascik spoke with Captain McGuigan of the Museum's security staff who discussed guard duties with her and who also discussed whether women were employed as security guards in the Museum.[4]

Miss Catherine Gaethers testified that she is a social worker in the psychiatric department of St. Luke's Hospital and in 1973 she counseled Piascik who suffered from repeated nose bleeds for which no organic diagnosis was found. The hospital staff had diagnosed Piascik's problem as psychologically based probably caused by the stress she suffered from a prolonged period of unemployment and financial problems. Gaethers concluded that the best therapy for Piascik would be to obtain employment for her. Believing that the Art Museum had three openings for guards, Gaethers discussed such employment with Piascik and persuaded her to apply. Gaethers phoned the Museum and spoke with Captain McGuigan, who indicated that the Museum needed security personnel. After encountering some difficulty with McGui-

gan, Gaethers spoke with Albert Grossman, the Museum's operations administrator, who told her that women were not employed as security guards by the Museum. Despite the difficulty she encountered with the Museum officials Gaethers instructed Piascik to apply for the job. Gaethers testified that after Piascik was interviewed by McGuigan she told Gaethers that McGuigan said that the Museum did not hire women as security guards. Armed with this information from Piascik, Miss Gaethers sent Dr. Herman E. Lee, Director of the Museum, a letter dated September 21, 1973, which states in part:

"As Assistant Director of Social Service at St. Luke's Hospital I received bimonthly from Ohio State Employment a listing of all the jobs in this area. In the recent issue which arrived on 8/20 I noticed that guards at the Art Museum are needed . . . and I proceeded to find if the positions had been filled. Initially Mr. McQuillan, Captain of the Guards, told me that he had not filled all of the positions and would welcome the applicant, that is until he learned that she was a woman, at which time he said 'this is a job for a man as they never had women;' when I commented that they have to begin sometime, he suddenly didn't have a position and after much exchange he put someone else on the telephone whose name I did not get; however, this person transferred me to his supervisor, Mr. Grossman, who gave me the same type of story about not hiring women and *that the job had been taken* which story I categorically rejected after having been told there was an opening. I let Mr. Grossman know that I was sending Mrs. Helen Piascik down immediately to make application. She [Piascik] later telephoned me from the Art Museum and informed me that they told her the job was taken. Mr. McQuillan informed her that he would let her fill out an application for future openings. She filled out

---

2. See, Joint Exhibits 1, 2.

3. See, Matya's testimony; Grossman's testimony; Joint Exhibit 3.

4. Shortly thereafter Captain McGuigan retired and was replaced by Matyas. At the time of trial McGuigan was deceased.

the application at the Museum but he would not take it, gave her an envelope to mail it in. He let her know that the only reason he gave her an application was due to women's liberation. Afterwards I had a gentlemen to call and he was told that guards are needed. While Mrs Piascik was there a man came in to apply for the position of guard and they proceeded to interview him." *See,* Plaintiff's Exhibit 2. (emphasis added)

Gaethers testified that shortly after she sent her letter Lee advised her by phone that McGuigan was in error, and that the Art Museum considered women candidates for the position of security guard. Gaethers also claims that the following day Lee admitted the truth of her charges with respect to McGuigan's conduct and reprimanded him.[5] Gaethers says Lee promised to send her a letter of apology, however, she admits that she never received the letter. She also admits that Lee advised her that there were no openings for security guards at the Museum.

Albert Grossman, Operations Administrator of the Museum, testified that he possessed absolute authority over hiring guards and watchmen and that the criteria for hiring were reliability, honesty and trustworthiness. Despite the absence of a guard opening when Grossman received Mrs. Piascik's completed employment application, he nevertheless processed her application, *i. e.,* checked her employment history and recommendations, because Director Lee instructed him to process it. In the course of processing Piascik's application Grossman learned that she did not leave her previous place of substantial employment, at the Davis Bakery, because of a "disagreement," as she indicated on her Museum application,[6]

but rather because she was discharged for violating the Davis policy regarding the handling of cash at the cash registers.[7] He also learned that the Davis Bakery would not rehire Piascik. Grossman conveyed this information to Director Lee, who determined that Piascik was not qualified for employment at the Museum. Grossman also stated that the two watchmen positions which became available in late September, 1973 were filled by Carey B. Yansy and Raymond Danley in late October, 1973.

Lee testified that after Piascik's employment application was processed, he decided that she should not be hired by the Museum, because of her prior discharge by the Davis Bakery for failure to follow the employer's policies with respect to handling cash at a cash register.

## II.

### PIASCIK WAS NOT DENIED EMPLOYMENT BECAUSE OF HER SEX

Plaintiff Piascik charges that she was denied employment as a security guard at the Cleveland Art Museum because of her sex. However, the Court finds that the three security guard positions which were available at the Museum in August, 1973 were filled by the close of business on September 21, 1973, the day on which Piascik first inquired about those positions from the Museum,[8] and long before her application for the guard job could be processed. The Museum's evidence establishing that *all* the security guard positions were filled on the day Piascik interviewed at the Museum is supported by Catherine Gaethers' admission that shortly after Dr. Lee received her letter dated September twenty-first he advised her that no security guard positions

---

5. Lee testified that his investigation of the events of September 21, 1973 revealed that there was confusion concerning the categories of job vacancies and that there had been heated exchanges of words between the parties to those conversations.

6. *See,* Joint Exhibit 6, p. 2.

7. *See, Joint Exhibit 6, Reference Form Letters* dated September 26, 1973, November 20, 1973.

8. In concluding that the last available guard position was filled on September 21 by Wade Clark the Court gives strong weight to Captain Matyas' testimony that he had known Clark several years earlier, that he talked with Clark about the job prior to September 21, and that the Museum had fully processed Clark's file by September 21, 1973.

were open. Plaintiff Piascik may not charge that she was discriminatorily denied consideration for an employment opening which does not exist at the time she furnishes the prospective employer with an unprocessed application.[9] The Court concludes that the Museum denied Piascik employment as a security guard because it had no guard opening at the time her application was completed and processed. Therefore the Museum did not deny Piascik employment as a security guard for an unlawful, sexually discriminatory reason. *See, Slamon v. Westinghouse Electric Co.,* 386 F.Supp. 174, 176 (D.C.Pa.1974); *Motorola Inc. v. McLain,* 484 F.2d 1339, 1344–45 (7th Cir. 1973); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

The Court also concludes that the Museum employment officials, at Director Lee's express order, processed Piascik's employment application for a position, despite the fact that it had no guard openings, anticipating that she might qualify for other employment at the Museum, such as the similar position of "night watchman," for which two vacancies materialized on approximately September 20, 1973. *See,* Grossman's testimony. However, before the watchmen positions were filled, and while the Museum was processing Piascik's application, Museum officials discovered that she failed to candidly disclose in her application that she was terminated from her employment at Davis Bakery for failing to adhere to employer policy regarding the handling of cash at cash registers and that as a consequence Davis would not rehire her. *See,* Joint Exhibit 6 (Forms Letters dated September 26, 1973 and November 20, 1973; *compare,* Piascik's Museum Employment Form, p. 2); Grossman's testimony. Subsequently Dr. Lee [10] alone determined that Piascik was not a suitable person for employment at the Museum, because of the critical recommendation she received from the Davis Bakery. The Court finds that Lee's rejection of Piascik's application was based on his determination that the negative reference she received from the Davis Bakery disqualified her from employment at the Museum where the hiring criteria were "reliability," "honesty," and "trustworthiness." *See,* Grossman's and Lee's testimony. *See, Parham v. Southwestern Bell Telephone Co.,* 433 F.2d 421, 423, 428 (8th Cir. 1970); [11] *E. E. O. C. v. National Academy of Sciences,* 2 C.C.H. Empl.Prac. Guide ¶ 11,010, p. 4749 (D.D.C. June 30, 1976).[12]

---

**9.** An unprocessed job application is one which the employer has not had sufficient time to verify by checking the references of prior employers.

**10.** Dr. Lee's testimony regarding Museum employment policies is particularly persuasive, first because his function as Director is to set those policies, and second because there is no testimony from any witness that he uttered any discriminatory statement or took any discriminatory measures against Piascik. Uncontroverted evidence establishes that he caused Piascik's application for a position to be fully processed despite the fact that no guard openings were available and despite the Museum's general policy not to process applications except when a specific vacancy is known.

**11.** In *Parham v. Southwestern Bell Telephone Company,* 433 F.2d 421, 423, 428 (8th Cir. 1970), the Eighth Circuit upheld an employer's decision not to hire an individual which was made on the basis of that individual's prior employment references. In that case, the individual plaintiff, who brought the action on behalf of himself and other blacks similarly situated, applied for a job and passed the company's test, but when the company checked with the plaintiff's previous employers, it was told that the plaintiff had been insubordinate and neglectful, and frequently absent. After receiving this information, the company wrote the plaintiff rejecting his application on the grounds that he did not have the qualifications for the job. The Court of Appeals, while finding that the company had discriminated against blacks prior to the plaintiff's rejection, nevertheless upheld the district court's conclusion that the company had acted properly and in a non-discriminatory manner in rejecting the application of this individual on the basis of the prior references.

**12.** In *E. E. O. C. v. Academy of Sciences,* 2 C.C.H. Empl.Prac.Guide, ¶ 11,010 (D.D.C. June 30, 1976), a female black plaintiff challenged the defendant's refusal to employ her because of her poor recommendations. The defendant had a practice of "reference checking" by which it verified information stated on an employment application by issuing a written questionnaire to previous employers. The reference

The Court concludes that plaintiff Piascik is not entitled to a verdict on any of her theories of unlawful sex discrimination in employment because the facts establish: (1) the security guard position, which was the only position for which she formally applied, was not vacant at the time she furnished the Museum with a completed, processed application; (2) the Museum ultimately rejected Piascik's employment application for jobs other than the guard position because of Davis Bakery's critical report on her. The Court grants final judgment to the defendant, the Cleveland Art Museum, because none of the Museum's reasons for denying Piascik consideration for employment were based on her sex.

This Memorandum of Opinion is adopted as findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).

IT IS SO ORDERED.

check on the plaintiff disclosed that she frequently left her place of work and took excessively long lunch and coffee breaks. At trial, the plaintiff was unable to offer evidence that blacks with poor references were more frequently refused employment than whites. In commenting on the evidence, the trial court observed: "The evidence deduced at trial clearly establishes that the applicant was not rejected because of racial discrimination but for a legitimate, non-discriminatory reason." 2 C.C.H. Empl.Prac.Guide, at 4749. Similarly, Piascik offered no persuasive evidence to establish that prospective women employees with poor references were treated any differently than prospective male employees with poor references. Piascik offered the testimony of William Sandberg, an 83-year-old male friend of Gaethers to support her claim that a guard vacancy existed at the Museum shortly after September 21, 1973. Around that date Sandberg recalled making a telephone call to the Museum, at Gaethers' behest, in which he claims to have arranged an appointment to interview for the position of security guard. Sandberg's testimony is devoid of credibility because it is based on his unverified recollection of a telephone call which he assertedly made to the Museum. No evidence suggests that Sandberg ever attempted to attend such an interview, or to keep the appointment which he claims he made over the telephone. Furthermore his demeanor did not persuade the Court of the accuracy of his recollections. The Court accords no weight to Sandberg's testimony.