**424**

ISLESBORO SCHOOL COMMITTEE et al., Plaintiffs-Appellees,

v.

Joseph A. CALIFANO, Jr., et al., Defendants-Appellants.

BRUNSWICK SCHOOL BOARD, Plaintiff-Appellee,

v.

Joseph A. CALIFANO, Jr., et al., Defendants-Appellants,

v.

H. Sawin MILLETT, Jr., et al., Defendants-Appellees.

Nos. 78–1302, 78–1304.

United States Court of Appeals, First Circuit.

Argued Dec. 6, 1978.

Decided March 9, 1979.

Marie E. Klimesz, Atty., Dept. of Justice, with whom Drew S. Days, III, Asst. Atty. Gen., Washington, D.C., George J. Mitchell, U.S. Atty., Portland, Maine, and Brian K. Landsberg, Atty., Dept. of Justice, Washington, D.C., were on brief, for defendants-appellants.

Hugh G. E. MacMahon, with whom Harry R. Pringle, and Drummond, Woodsum, Plimpton & MacMahon, P.A., Portland, Maine, were on brief for appellees, Islesboro School Committee, et al.

Merton G. Henry, with whom Nicholas S. Nadzo, David P. Ray, and Jensen, Baird, Gardner & Henry, Portland, Maine, were on brief, for appellee, Brunswick School Bd.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

BOWNES, Circuit Judge.

Congress passed the Education Amendments of 1972 to proscribe discrimination

based on sex under any educational program activity receiving federal financial assistance.

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . .

20 U.S.C. § 1681(a). The Department of Health, Education and Welfare (HEW), pursuant to 20 U.S.C. § 1682, issued regulations, 45 C.F.R. §§ 86.1–86.71, designed to effectuate the mandate of 20 U.S.C. § 1681, or Title IX § 901, as it is also called. These were addressed in part to the employment practices of educational institutions. The issue before us is whether HEW exceeded its authority by issuing such employment-related regulations.

Plaintiffs, comprising several school districts in Maine, were alleged to discriminate in their maternity leave employment policies by treating pregnancy differently from other temporary disabilities. This, HEW asserted, violated 45 C.F.R. Part 86, specifically section 86.57(c). The period of noncompliance was allegedly from June 1975, to July, 1977. The regulation in controversy reads as follows:

*Pregnancy as a temporary disability.*

A recipient shall treat pregnancy, childbirth, false pregnancy, termination of pregnancy, and recovery therefrom and any temporary disability resulting therefrom as any other temporary disability for all job related purposes, including commencement, duration and extensions of leave, payment of disability income, accrual of seniority and any other benefit or service, and reinstatement, and under any fringe benefit offered to employees by virtue of employment.

45 C.F.R. § 86.57(c). Plaintiffs were threatened with a cutoff in federal and state funds.[1] The school districts filed suit requesting declaratory and injunctive relief:

they requested that HEW be enjoined from enforcing the regulation on the grounds that it was promulgated in excess of the authority conferred by statute. The district court, after a hearing on cross-motions for summary judgment, found 45 C.F.R. § 86.57(c) invalid and enjoined its enforcement and the cutoff of state or federal funding for noncompliance. The trial court reasoned that neither the plain language of section 901, 20 U.S.C. § 1681, nor its legislative history embraced employees and that they were, therefore, not entitled to its protection. The court's opinion is reported at 449 F.Supp. 866. Both HEW and the State of Maine appeal from the decision.

■ We begin with an examination of the language of the statute to determine whether it can reasonably be construed to include the grant of authority under which HEW promulgated the regulation in question. The language of section 901, 20 U.S.C. § 1681(a), on its face, is aimed at the beneficiaries of the federal monies, *i. e.*, either students attending institutions receiving federal funds or teachers engaged in special research being funded by the United States government. The section does not include employees within its terms. This reading of the plain language of the statute is buttressed by an examination of the specific exemptions mentioned in the statute. They all deal with student admissions or activities of a student nature, *e. g.*, "beauty" pageants, social fraternities and sororities, Boys State conference, Girls Nation conference, father-son and mother-daughter activities. Nothing in the statute suggests that it should be construed to extend to employees *qua* employees (as opposed to their status as recipients of specialized federal funding for a special activity or research).

■ Since, however, employees are not *expressly* eliminated from the statute's coverage, and in light of HEW's strong urging that employees should be construed as coming within the coverage of the statute, we

1. Plaintiffs were also threatened with a violation of Maine law which makes noncompliance with the federal scheme a state violation as well. State funds could also be withdrawn. 20 M.R.S.A. §§ 6, 3755 (Supp.1977).

examine the legislative history for any illumination it can shed. Senator Bayh introduced the legislation which was later to become 20 U.S.C. § 1681. The bill comprised several sections; what is now known as Title IX, 20 U.S.C. §§ 1681 & 1682, was among them. Another section was designed to amend the Equal Pay Act of the Fair Labor Standards Act, 29 U.S.C. § 213(a), by extending coverage to professional, executive, or administrative female employees. Also included in Senator Bayh's proposed legislation was an amendment to Title VII, 42 U.S.C. § 2000e, which would have extended coverage to teachers in both private and public institutions. These latter two points are of particular importance as HEW relies in its brief upon several comments from Senator Bayh referring to the effect his amendment will have, not only on students, but on conditions of faculty employment. HEW points to the following dialogue to fortify its position that Title IX intended its coverage to extend to employees of educational institutions.

Mr. PELL. . . . Sections 1011(a) and (b) [these sections became in large measure, 20 U.S.C. § 1681(a) and (c)] include all educational institutions which receive Federal Assistance. This includes elementary and secondary schools as well. With regard to private undergraduate colleges, the Senator has excluded from coverage their admissions practices. Does the same exclusion apply to nonpublic institutions at the elementary and secondary level?

Mr. BAYH. At the elementary and secondary levels, admissions policies are not covered. As the Senator knows, we are dealing with three basically different types of discrimination here. We are dealing with discrimination in admission to an institution, discrimination of available services or studies within an institution once students are admitted, and discrimination in employment within an institution, as a member of a faculty or whatever.

In the area of employment, we permit no exceptions. In the area of services, once a student is accepted within an institution, we permit no exceptions. The Senator from Rhode Island asked about admissions policies of private secondary and primary schools. They would be excepted.

118 Cong.Rec. 5812 (1972). The Department of Health, Education and Welfare argues that since Senator Pell had identified his question as relating to what is now 20 U.S.C. § 1681, Senator Bayh's response, by including comments regarding employment practices, thereby proves that Title IX encompasses employment practices in addition to discriminatory practices aimed at students. We cannot agree. A fair reading both of the colloquy above, as well as the discussion immediately preceding and following the above-quoted passage, indicates that Senator Bayh divided his analysis into three sections, two of which were specifically aimed at students (admissions and services), the third at employees (employment). While Senator Bayh's response was more extended than it needed to be for a direct answer to Senator Pell's question, we think HEW's reading is strained. We think this particularly in light of the fact that the discussion was an oral one and thus not as precise as a response in written form, and in view of other parts of the discussion on the amendment, wherein Senator Bayh continuously broke down the amendment into separate categories, certain of them dealing only with students (Title IX) and others dealing with employees (Title VII and the Equal Pay Act).[2]

Frequently, during the course of the debates, Senator Bayh identified the employment sections of his bill as amendments to Title VII and to the Equal Pay Act.

Title VII of the 1964 Civil Rights Act has been extremely effective in helping to eliminate sex discrimination in employment. Unfortunately it has been of no use in the education field, because the

---

**2.** The proposed amendment to Title VII was ultimately dropped prior to passage, since an amendment to the same effect had recently been enacted as part of the Equal Employment Act of 1972, Pub.L. No. 92–261 § 2(1), 86 Stat. 103 § 2, 42 U.S.C. § 2000e(a).

title by its terms exempts from its protection employees of educational institutions who "perform work connected with the educational activities" of the institution. Therefore, the second major portion of this amendment would apply title VII's widely recognized standards of equality of employment opportunity to educational institutions.

In addition, to make sure that both men and women employees receive equal pay for equal work, my amendment would extend the Equal Pay Act of 1963 to include administrative, executive, and professional workers, including teachers, all of whom are presently excluded.

*Id.* at 5807. The sections which eventually became Title IX were described in terms of their effects on the beneficiaries of federal funds, *i. e.*, the students. *Ibid.*

The summary of the bill which was read into the Congressional Record included the following categories: "Basic Prohibition" (dealing with admissions to educational institutions); "Enforcement and Related Provisions" (each agency extending federal financial assistance empowered to issue regulations and insure compliance via termination in funding); "Employment" (Title VII amended to include public and private educational institutions within the statute's coverage); "Equal Pay for Professional Women" (Fair Labor Standards Act amended to eliminate exemption for executive, administrative or professional employees). *Id.* at 5808. This breakdown demonstrates that the basic provisions dealing with admissions and services at educational institutions, now embodied in Title IX, were separate and distinct from the provisions amending Title VII and the Equal Pay Act, both of which dealt with employment.

While it is true that there were occasional lapses during the discussions, wherein one

of the senators would telescope the sections, thereby suggesting that employment was to be covered under the basic provisions of Title IX, a careful examination of the debates had led us to conclude that these were the product of the imprecision of oral discussion rather than a reflection that the Act intended section 901 of Title IX to embrace prohibitions against sex discrimination in employment. This was reserved for the amended Title VII and Equal Pay Act.

■ In its discussion of the legislative history, HEW points to the failure of Congress to adopt a section which would have paralleled section 604 of Title VI, 42 U.S.C. § 2000d–3. The deleted section read:

Sec. 1004. Nothing contained in this title shall be construed to authorize action under this title by any department or agency with respect to any employment practice of any employer, employment agency, or labor organization except for a primary objective of the Federal financial assistance is to provide employment.

H.R. 7248, 92d Cong., 1st Sess. § 1004 (1971). *See also* [1972] U.S.Code Cong. & Admin.News pp. 2462, 2566. Section 1004 was contained in the House version of the bill and was deleted from the Act as finally enacted. *See id.* at 2671–72. HEW argues that by eliminating this section, Congress thereby intended to cover employment practices under section 901 of Title IX. This reasoning is not persuasive. The above-cited section would have been inconsistent with other sections of the Act then being enacted, namely the amendments to Title VII and the Equal Pay Act, which authorized both the Equal Employment Opportunity Commission and the Labor Department (the agencies responsible, respectively, for the enforcement of Title VII and the Equal Pay Act) to take such action.[3]

**3.** HEW also argues that Congress's failure to disapprove the regulations found at 45 C.F.R. Part 86 should be construed as approval. By statute, the regulations become effective forty-five days following their transmission to Congress unless Congress affirmatively, by concurrent resolution, acts to disapprove them. 20 U.S.C. § 1232(d)(1), (f). Since Congress had

the opportunity to disapprove the regulations, HEW argues that the failure to do so is strong evidence in favor of their propriety. We disagree. Congressional inaction should not lightly be construed as approval. This was underscored by the passage, five months following the transmission of the regulations here at issue, of an amendment providing that the failure

■ Our holding is the first on this issue by a court of appeals. Several district courts also have concluded, however, that HEW was without authority to issue the employment-related regulations found at 45 C.F.R. Part 86. *Romeo Community Schools v. HEW*, 438 F.Supp. 1021 (E.D.Mich.1977), *appeal pending*, No. 77–1691 (6th Cir. 1978) (the regulations were not in furtherance of the legislative purpose and, therefore, not authorized); *University of Toledo v. HEW*, 464 F.Supp. 695 (N.D.Ohio 1979) (regulations are void and unenforceable because not authorized by section 1681); *Junior College District of St. Louis, St. Louis County, Mo. v. Califano*, 455 F.Supp. 1212 (E.D.Mo. 1978) (20 U.S.C. § 1681 applies only to students and other direct beneficiaries of federal financial assistance, not to employees; the regulations are, therefore, not authorized); *Dougherty County School System v. Califano*, Civ. Action No. 78–30–ALB (N.D.Ga. Aug. 22, 1978) (Title IX does not authorize HEW to promulgate regulations relating to employment); *Seattle University v. HEW*, No. C77–631S (W.D.Wash. Jan. 3, 1978) (regulations are overbroad and exceed the scope of authority granted to HEW under Title IX). *Cf. Board of Educ. of Bowling Green City School District v. HEW*, No. C78–177 (N.D.Ohio May 5, 1978) (plaintiff shows likelihood of prevailing on issue that 45 C.F.R. Part 86 is not authorized by statute).

The Department of Health, Education and Welfare points to two district court opinions in support of its position. *Piascik v. Cleveland Museum of Art*, 426 F.Supp. 779 (N.D.Ohio 1976), is cited for the proposition that 20 U.S.C. § 1681(a) encompasses employment discrimination. In that case, plaintiff brought suit for employment discrimination, premising her cause of action on violations of 42 U.S.C. §§ 2000e *et seq.* and 20 U.S.C. § 1681(a). The court, before granting summary judgment for defendant, commented in a footnote [4] on the applicability of 20 U.S.C. § 1681. *Id.* at 780–81 n.1. The tenor of the comment is somewhat ambivalent. The focus of the court's attention was whether a private cause of action was implied in 20 U.S.C. § 1681(a) rather than whether that statute properly extended to discrimination against employees. The court adverted to the fact that 20 U.S.C. § 1681(a) formed part of a legislative package that included an amendment to Title VII. The court also stated: "Without the recognition of a private cause of action under § 1681(a), individual litigants who suffered from *non-employment* related sex discrimination which violated the express prohibitions of § 1681(a), would be left with no remedy for the personal injury which they suffered to their education." *Ibid.* (emphasis added). Within the same footnote, however, the court used language which could be construed to support a finding that section 1681(a) does extend to employment related discrimination. To the extent that *Piascik* stands for the proposition that section 1681 embraces sex discrimination in employment, we do not find it persuasive. We remain unconvinced, however, that it stands squarely for that proposition.

The other case cited by HEW is *United States v. City of Chicago*, 395 F.Supp. 329 (N.D.Ill.1975), *aff'd mem.*, 525 F.2d 695 (7th Cir. 1975). That case involved charges of discrimination by the police department in violation of 31 U.S.C. §§ 1221 *et seq.* (revenue sharing). The court construed language in 31 U.S.C. § 1242(a), which is parallel to that of 20 U.S.C. § 1681(a), as not posing a bar to suit brought by policemen

---

of Congress to disapprove a final regulation should be construed neither as approval of the regulation nor as a congressional finding of consistency with the act granting authority to promulgate the regulation. Pub.L. No. 94–142 § 7(a)(1), (b), 89 Stat. 796 (1975) (codified at 20 U.S.C. § 1232(d)(1)).

4. While it may appear to be a minor matter, we caution the Department of Health, Education and Welfare that it does not indicate that the passage it quotes from the *Piascik* decision, at 18 of its brief, is from a footnote in *Piascik.* We urge the Department to exercise more care in its citations. The fact that the court addresses the applicability of 20 U.S.C. § 1681(a) only by way of a footnote has considerable bearing on the proper use of that case as precedent for the proposition advanced by HEW.

for employment discrimination in hiring and promotion policies and practices. 395 F.Supp. at 342–44. HEW reasons that this, accompanied by the court's comments stating that Title VI did not bar the suit, supports its reading that 20 U.S.C. § 1681 extends to employment discrimination in educational institutions. We disagree. The State and Local Assistance Act of 1972, 31 U.S.C. §§ 1221 *et seq.*, embodies an entirely different legislative scheme from the Education Act and its Amendments, 42 U.S.C. §§ 2000c, 2000d, and 20 U.S.C. §§ 1681 *et seq.* Under the revenue sharing program, the direct beneficiaries are the *departments, e. g.,* police, fire, etc., receiving the funds. Those seeking to participate in or secure the benefits of the police department are the employees and potential employees. Such is not the case with employees at educational institutions receiving federal funds (except in the situation where the teacher or faculty member is being funded under a federal grant of some sort), where the funds are intended to benefit the *students,* for, *e. g.,* free books, educational services, etc. We do not, therefore, read *United States v. City of Chicago* as addressing the question we face here.

██ The last job in HEW's volley is that employment-related discrimination is proscribed under 20 U.S.C. § 1681 when that discrimination infects the beneficiaries of the programs, *i. e.,* the students. This "infection theory," as it is called, has been approved where it has been shown that eliminating discrimination against students is impossible in the absence of eliminating discrimination against faculty. *United States v. Jefferson County Bd. of Educ.,* 372 F.2d 836, 884–86 (5th Cir. 1966), *aff'd en*

banc, 380 F.2d 385 (5th Cir.), *cert. denied sub nom. Board of Educ. of City of Bessemer,* 389 U.S. 840, 88 S.Ct. 67, 19 L.Ed.2d 103 (1967). *See also Board of Public Instruction of Taylor County, Florida v. Finch,* 414 F.2d 1068 (5th Cir. 1969). While the basic premise might be correct, that does not adequately underpin a grant of authority to HEW to promulgate broad-ranging regulations canvassing employment-related discrimination.[5] A nexus between the discrimination against employees and its effect on students must first be shown.

Before concluding, we take this occasion to observe that the question we herein resolve is of largely academic interest (albeit not to the specific litigants here). On October 31, 1978, Congress amended Title VII by adding a prohibition against the disparate treatment of pregnancy as a disability. Pub.L. No. 95–555, 92 Stat. 2076, 42 U.S.C. § 2000e(k). This legislation was passed to overturn the Supreme Court's holding to the contrary in *General Electric Co. v. Gilbert,* 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976). S.Rep.No.95–331, 95th Cong., 1st Sess. 2–3 (1978). Therefore, plaintiffs' school districts disparate treatment of pregnancy as a disability would now be susceptible to challenge as violative of Title VII.[6]

*Affirmed.*

---

5. We also note that HEW did not allege in the court below that the pregnancy leave policies of the plaintiffs entailed discrimination against students. There thus seems to be no factual basis for the assertion of the infection theory to support the regulation here challenged.

6. The Main Supreme Judicial Court has recently held that, pursuant to a state statute, 20 M.R.S.A. § 1951, pregnancy must be treated as any other temporary medical disability for which certified teachers are entitled to take

sick leave as a mandatory benefit. *Murray v. Waterville Bd. of Educ.,* 390 A.2d 516, 519 (Me.1978). *See also Millinocket School Committee v. Millinocket Teachers Assn.,* 390 A.2d 1106 (Me.1978). The retroactive effect, if there be any, of this ruling is uncertain. The coverage would also seemingly, by virtue of the statute's language, be limited solely to certified teachers and would not extend to other female employees, *e. g.,* administrative, executive, secretarial, janitorial.