ROMEO COMMUNITY SCHOOLS, Plaintiff-Appellee,

v.

UNITED STATES DEPARTMENT OF HEALTH, EDUCATION AND WELFARE et al., Defendants-Appellants,

and

Appeal of Susan K. GARRARD, Defendant-Intervenor.

Nos. 77–1691, 77–1692.

United States Court of Appeals, Sixth Circuit.

Argued April 16, 1979.

Decided June 20, 1979.

Stephan J. Pollak, Richard M. Sharp, Shea & Gardner, Kent L. Jones, Washington, D. C., James K. Robinson, U. S. Atty., Pamela J. Thompson, Asst. U. S. Atty., Detroit, Mich., Drew S. Days, III, Asst. Atty. Gen., Brian K. Landsberg, Marie E. Klimesz, Dept. of Justice, Civ. Div., Washington, D. C., for defendants-appellants.

Charles L. Fine, Clark, Hardy, Lewis, Fine & Asher, Douglas A. Firth, Birmingham, Mich., for plaintiff-appellee.

Before WEICK, LIVELY and ENGEL, Circuit Judges.

LIVELY, Circuit Judge.

This appeal concerns Title IX, §§ 901–907 of the Education Amendments of 1972, Pub.L. 92–318, 86 Stat. 235, codified at 20 U.S.C. §§ 1681–1686 (1976). Title IX, which prohibits sex discrimination, constituted a small part of the Education Amendments of 1972 which dealt with federal involvement in a wide range of activities of educational institutions at all levels. For legislative history and purpose of Pub.L. 92–318, see 1972 U.S.Code Cong. and Adm.News, p. 2462, et seq. The particular question for decision is whether section 901 (hereafter 20 U.S.C. § 1681)[1] applies only to students involved in programs or activities receiving federal financial assistance or applies additionally to employees of educational institutions receiving such assistance. The district court held that § 1681 does not deal with sex discrimination against employees of educational institutions, but was enacted to prohibit discrimination against students who are the intended beneficiaries of federal financial assistance to education. We agree and affirm.

This action was commenced by Romeo Community Schools (Romeo) seeking a declaratory judgment that Subpart E of Title IX regulations, 45 C.F.R. Part 86, were adopted and issued by the Secretary of Health, Education and Welfare (HEW) in excess of the authority conferred by Congress. The particular regulation which was in dispute was 45 C.F.R. § 86.57.[2] Under

1. The operative language is found in § 1681(a): "(a) No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance, except that . . . .." Nine exceptions are listed, which refer generally to activities of institutions and organizations which have traditionally offered admission or membership only to persons of one sex.

2. § 86.57 provides:
§ 86.57 Marital or parental status.
(a) *General.* A recipient shall not apply any policy or take any employment action:

(1) Concerning the potential marital, parental, or family status of an employee or applicant for employment which treats persons differently on the basis of sex; or
(2) Which is based upon whether an employee or applicant for employment is the head of household or principal wage earner in such employee's or applicant's family unit.
(b) *Pregnancy.* A recipient shall not discriminate against or exclude from employment any employee or applicant for employment on the basis of pregnancy, childbirth, false pregnancy, termination of pregnancy, or recovery therefrom.
(c) *Pregnancy as a temporary disability.* A recipient shall treat pregnancy, childbirth, false pregnancy, termination of pregnancy,

the terms of its collective bargaining agreement, pregnancy is not treated by Romeo the same as other temporary disabilities for a number of job related purposes. Prior to filing its complaint in district court Romeo received a letter from the regional director of HEW demanding that it alter its practices with respect to pregnancy leave to conform to § 86.57(c) and reimburse and adjust the salaries and retirement credits of any employees who had not been permitted to use accrued sick leave while on pregnancy related leave since June 23, 1972. The letter from HEW also required assurances from Romeo that it would comply with § 86.57, and that reimbursement had been made. Romeo was advised that enforcement proceedings would be recommended under 45 C.F.R. § 80.8[3] if these assurances were not received.

In his opinion Judge Feikens of the district court considered the legislative history of Title IX and its similarities to Title VI of the Civil Rights Act of 1964. However, his decision was based primarily upon the language of § 1681. The court concluded that students, not employees of educational institutions, are the persons intended to be protected from sex discrimination by Title IX. *Romeo Community Schools v. U. S. Department of HEW,* 438 F.Supp. 1021

(E.D.Mich.1977). Though the published opinion refers to all of Subpart E of the Title IX regulations, the judgment which was actually entered declared only the regulations contained in 45 C.F.R. § 86.57 invalid.

Despite near unanimity among the courts which have considered the issue,[4] HEW argues that § 1681 was intended to prohibit sex discrimination in employment practices by educational institutions and that its regulations related to employees are authorized and valid. HEW asserts that the district court construed the language of § 1681 narrowly rather than broadly, an approach which is not permitted when considering civil rights legislation. Noting that the opening words of the section are "[n]o person," HEW maintains that it was error to restrict this broadest possible designator of beneficiaries by relying on later references to particular types of discrimination which are prohibited. In substance, it is the position of HEW that teachers and counselors, as well as students, are "persons" who participate in and benefit from federally assisted programs and are vulnerable to discrimination under such programs.

HEW seeks to bolster its argument by pointing out that none of the exceptions contained in § 1681(a)(1)–(9) excludes em-

---

and recovery therefrom and any temporary disability resulting therefrom as any other temporary disability for all job related purposes, including commencement, duration and extensions of leave, payment of disability income, accrual of seniority and any other benefit or service, and reinstatement, and under any fringe benefit offered to employees by virtue of employment.

(d) *Pregnancy leave.* In the case of a recipient which does not maintain a leave policy for its employees, or in the case of an employee with insufficient leave or accrued employment time to qualify for leave under such a policy, a recipient shall treat pregnancy, childbirth, false pregnancy, termination of pregnancy and recovery therefrom as a justification for a leave of absence without pay for a reasonable period of time, at the conclusion of which the employee shall be reinstated to the status which she held when the leave began or to a comparable position, without decrease in rate of compensation or loss of promotional opportunities, or any other right or privilege of employment.

**3.** 45 C.F.R. § 80.8 provides for effecting compliance "by the suspension or termination of or refusal to grant or to continue Federal financial assistance, or by any other means authorized by law." This regulation reflects the language of § 902 of Title IX, 20 U.S.C. § 1682, which provides for enforcing § 1681 by termination of or refusal to grant or continue assistance to any agency found in violation thereof, "or by any other means authorized by law."

**4.** *See Isleboro School Comm. v. Califano,* 593 F.2d 424 (1st Cir. 1979), affirming *Brunswick School Bd. v. Califano,* 449 F.Supp. 866 (D.Maine 1978); *Junior College Dist. of St. Louis v. Califano,* 597 F.2d 119 (8th Cir. 1979), affirming 455 F.Supp. 1212 (E.D.Mo.1978); *University of Toledo v. HEW,* 464 F.Supp. 693 (N.D.Ohio 1979); *McCarthy v. Burkholder,* 448 F.Supp. 41 (D.Kansas 1978); *but see Piascik v. Cleveland Museum of Art,* 426 F.Supp. 779 (N.D.Ohio 1976) (dictum in footnote).

ployment practices from coverage. This argument cuts both ways. An examination of these provisions discloses that each exception relates to students, student bodies or participants in programs. They are not concerned with teachers or staff. It may be fairly assumed that the exceptions relate to students because students are the subject of § 1681; that is, the exceptions deal with the same subject matter as that covered generally by the preceding language.

We find HEW's construction of Title IX to be strained. It seeks a reading of § 1681, "no person shall be discriminated against, on the basis of sex, in the operation of any educational institution receiving federal. financial assistance." However, as actually written, the statute is not nearly so broad. The words "no person" are modified by later language which clearly limits their meaning. The concern of this particular statute is not with all discrimination against persons in any way connected with educational institutions which receive federal funding. Rather, it reaches only those types of disparate treatment which manifest themselves in exclusion from, denial of benefits of, or otherwise result in discrimination on the basis of sex "under any education program or activity receiving Federal financial assistance . . . ." Unless the discrimination relates to a program or activity which receives federal funding, it is not prohibited by § 1681.

This is a reasonable construction of the language, because Title IX does not stand alone. It is part of a mosaic of federal statutes which protect the rights of women and minorities. Two of the pre-existing federal laws which prohibited discrimination in employment were amended by § 906 of Pub.L. 92–318, the same statute which contained the operative and enforcement provisions of Title IX (§§ 1681 and 1682). These amendments to the Equal Employment Opportunities Act, Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e,

and the Equal Pay Act, 29 U.S.C. § 213(a), brought employees of educational institutions engaged in educational activities within their coverage and prohibited discrimination on the basis of sex. The inclusion of these amendments to existing laws which closed loopholes relating to employment practices required that Pub.L. 92–318, for consistency, not contain a disclaimer similar to that contained in Title VI.[5] The elimination of this language does not indicate that Title IX was intended to cover employment practices. Rather it reflects the fact that at that point in the legislative process such a provision in Pub.L. 92–318 would have been inaccurate and contradictory in light of this statute's extension of existing laws to cover employment practices of educational institutions.

Though the regulation by which HEW seeks to enforce Title IX's prohibition against discrimination speaks of "other means authorized by law," it is clear that discontinuance of federal financial assistance is the means of effecting compliance which is most available to HEW and the primary means contemplated by the enforcement provisions contained in § 1682. When this sanction is applied one result is that the students who are engaged in the federally funded activities suffer. This may be a reasonable burden for the students to bear when the object is to prevent or put an end to discrimination against students. However, it is unreasonable to assume that Congress intended for students in a school system to be deprived of the benefits of federal funding as a means of enforcing individual rights of teachers and other school employees. This is particularly true in view of the fact that the same bill included the amendments which gave school employees direct and superior remedies for sex discrimination provided in Title VII of the 1964 Civil Rights Act. These remedies involve no loss of student benefits.

**5.** Section 604 of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d–3 provides:

Nothing contained in this subchapter shall be construed to authorize action under this subchapter by any department or agency with respect to any employment practice of any employer, employment agency, or labor organization except where a primary object of the Federal financial assistance is to provide employment.

The arguments for reversal based on the legislative history of Title IX are not persuasive. Certain comments by Senator Bayh, sponsor of the bill which became Title IX, are quoted. In these comments Senator Bayh stated that a purpose of the bill was the elimination of sex discrimination in employment by educational institutions. These statements appear to refer to § 906 of the bill then under consideration. Section 906 consisted of the amendments to the Civil Rights Act of 1964 and the Equal Pay Act previously referred to. The legislation which Senator Bayh sponsored was aimed at all sex discrimination in education. However, it provided a different approach to discrimination against students and against teachers and other school employees. This construction is supported by the summary of the bill contained in the Congressional Record. In this summary, by Senator Bayh, there is a breakdown which treats the prohibition against sex discrimination in federally funded education programs separately from the prohibition against discrimination in education-related employment. In describing the latter prohibition the summary refers specifically to the bill's expansion of coverage and eradication of loopholes in existing laws and describes the *remedies* under Title VII as "extremely effective." Cong.Rec., S5806–07 (daily ed. Feb. 28, 1972). These statements by the sponsor of the legislation strengthen our conclusion that Congress did not intend to deal with discriminatory employment practices when it enacted § 1681.

Both Judge Feikens in this case and Judges Bownes in *Isleboro School Comm. v. Califano, supra,* have fully answered the various arguments made in support of HEW's construction of § 1681. Since we find both opinions to be in accord with our views, no purpose would be served by dealing with the arguments for reversal at length in this opinion.

The judgment of the district court is affirmed.