BOARD OF EDUCATION OF the CITY OF NEW YORK and Irving Anker, Chancellor of City School District, Plaintiffs,

v.

Joseph A. CALIFANO, Secretary of the Department of Health, Education and Welfare, the Department of Health, Education and Welfare; Ewald Nyquist, Commissioner of Education of the State of New York; New York State Division of Human Rights: Melvin Barman, Noah Gelfond and Daniel Gavrin, on behalf of themselves and on behalf of all male Health and Physical Education Teachers, etc., Claire Cohen, Cynthia Crawford and Joyce Silversmith, etc., Defendants.

No. 77 Civ. 1609 (MEL).

United States District Court,
S. D. New York.

Feb. 11, 1981.

Allen G. Schwartz, Corp. Counsel, New York City, for plaintiffs; Deborah Rothman, Gary R. Tarnoff, New York City, of counsel.

James R. Sandner, New York City, for defendants Berman, Gelfond and Gavrin et al.; Jeffrey S. Karp, Janis L. Barquist, New York City, of counsel.

LASKER, District Judge.

## I.

The Board of Education of the City of New York and Irving Anker, the Chancellor of the New York City School District (collectively, the Board), brought this action in April 1977 against the Department of Health, Education and Welfare and its Secretary, Joseph Califano, (collectively, HEW), the Commissioner of Education of the State of New York and the New York State Division of Human Rights (collectively, the state defendants), and certain male and female physical education teachers in the New York City School system, both individually and as representatives of classes of male and female teachers respectively. The Board sought declaratory and injunctive relief to resolve allegedly disparate determinations by the state defendants and HEW as to the legality of a proposed merger of seniority lists for male and female physical education teachers and to uphold the legality of the proposed merger.

Until 1973 the Board gave separate examinations for male and female physical education teachers, and consequently maintained separate lists for eligible candidates for appointment and for seniority, since the lists were based in part on the results of those examinations. On October 5, 1976, the State Commissioner of Education ordered the Board to merge the seniority lists on the grounds that the maintenance of separate lists constituted unlawful sex discrimination. While the Board was preparing to comply with the Commissioner's or-

der,[1] a representative of HEW informed the Board that HEW was considering whether the proposed merger would violate Title IX, 20 U.S.C. §§ 1681 *et seq.*

The Board filed this action to obtain a resolution of the apparently conflicting positions of the State Commissioner and HEW.

The male teachers counterclaimed that the maintenance of separate seniority lists for male and female teachers constituted sex discrimination and that the layoffs of male teachers in 1975 based on separate lists were unlawful. They seek back pay and other benefits which they allege they would have received had they not been laid off.

On December 15, 1977, HEW's motion to dismiss was granted on the grounds that there was no case or controversy between the Board and HEW since HEW had not made a formal determination as to the legality of the proposed merger or to withhold funds. On November 17, 1979, the state defendants' motion for summary judgment was granted on the grounds that there was no controversy between the Board and the state defendants since both parties agreed that the lists should be merged.

The male teachers now move for summary judgment on their counterclaim.[2] They contend that in 1975, they were laid off while the Board retained female teachers who were hired after they were. They claim that this action violated their rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 *et seq.*, New York Executive Law §§ 296, 297 (McKinney 1972 & Supp. 1980–1981), and the equal protection clauses of the Fourteenth Amendment and the New York Constitution.

The Board raises several defenses to the motion. First, it contends that there is a material question of fact as to whether the maintenance of separate seniority lists for men and women constitutes a "bona fide" seniority system as that term is used in Section 703(h), 42 U.S.C. § 2000e–2(h). If it were "bona fide" it would be valid as a matter of law under that section. Second, the Board contends that the layoffs do not constitute discrete acts occurring after the effective date of Title VII, as hence are not actionable. Third, the Board argues that according to the considerations set forth in *Los Angeles Department of Water and Power v. Manhart*, 435 U.S. 702, 98 S.Ct. 1370, 55 L.Ed. 657 (1978), the male teachers are not entitled to retroactive relief. Fourth, the Board contends that Title IX did not require the merger of the lists until 1978, and that the failure to merge the lists earlier was a reasonable response to a letter from an HEW representative which indicated that the merger might violate the rights of the female students under Title IX. Finally, the Board argues that as to the claim under the Fourteenth Amendment, there is no evidence of intent to discriminate as required by *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976) and *Village of Arlington Heights v. Metropolitan Housing Development Corporation*, 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977).

## II.

### A. Title VII

#### 1. Bona Fide Seniority System

Section 703(h) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(h), provides in part:

> "Notwithstanding any other provision of this subchapter, it shall not be an unlawful employment practice for an employer to apply different standards of compensation, or different terms, conditions, or privileges of employment pursuant to a bona fide seniority or merit system, or a system which measures earnings by quantity or quality of production

---

1. The separate seniority lists were merged in 1977.

2. The male teachers also move for certification of the class. Since that motion is unopposed, it is granted.

or to employees who work in different locations, provided that such differences are not the result of an intention to discriminate because of race, color, religion, sex, or national origin, nor shall it be an unlawful employment practice for an employer to give and to act upon the results of any professionally developed ability test provided that such test, its administration or action upon the results is not designed, intended or used to discriminate because of race, color, religion, sex or national origin."

■ We agree with the Board that there is a material question of fact as to whether its prior maintenance of separate seniority lists for men and women constituted a "bona fide" seniority system within the meaning of the statute. The construction of the term was discussed in *Acha v. Beame*, 570 F.2d 57, 64 (2d Cir. 1978). Women police officers of the New York City Police Department claimed that the layoff of female police officers pursuant to a "last-hired, first-fired" seniority policy constituted illegal sex discrimination. The court, affirming the district court's decision to vacate a partial summary judgment, reviewed the principles applicable to a determination whether a seniority system is "bona fide:"

"Section 703(h) of the Act immunized only 'bona fide' seniority systems. *Bona fides*, in the context of the statute requires, at least in part, that the seniority system be applied fairly and impartially to all employees, that it not have its 'genesis in [unlawful] discrimination,' and that it be maintained free from illegal purposes. . . . A system designed or operated to discriminate on an illegal basis is not a 'bona fide' system."

*Id.* (citations omitted).

The Board argues that its seniority system was bona fide in that it operated according to "last-hired, first-fired" within each teachers license. According to the Board, separate physical education programs had been administered for male and female students. The separate qualifying tests given to male and female candidates to teach physical education rated the different capabilities required for the separate programs. The teachers were licensed separately, based in part on the results of the exams. Consequently, the Board argues, the layoffs of men hired before women who were retained resulted from the neutral policy of basing seniority on the separate testing and licensing of male and female teachers.

The male teachers contend that the physical education programs for male and female students were not entirely separate according to the sex of their teachers, as the Board claims. They argue that there was cross-over by the faculty teaching these programs, that is, that male teachers taught female students and female teachers taught male students. (Notably, the male teachers do not specify how much cross-over occurred, so that it cannot now be determined whether it was de minimis or sufficient to show that the Board's stated purpose for the separate licensing system is a sham.) Moreover, they argue that the Board's discriminatory purpose in maintaining the separate seniority lists is demonstrated by its refusal to merge the seniority lists despite decisions since 1973 by the state Commissioner of Education and courts holding that the separate lists were illegal. *See, e. g., Matter of Board of Education v. Stein*, 47 App.Div.2d 964 (2d Dep't 1975); *Matter of Daniel Gavrin v. Board of Education*, 16 Ed.Dept.Rep. 109 (Comm'r of Educ. 1976).

Consequently, there is a material question of fact raised as to whether the Board's purpose in maintaining the separate lists was discriminatory, or whether it was to facilitate the maintenance of separate physical education programs for male and female students, and to meet the distinct needs of the male and female students in those programs. Accordingly, summary judgment cannot be granted either party on this issue.

### 2. Post-Act Discrimination

The Board argues that the male teachers have not alleged the occurrence of a discrete discriminatory act after 1972, the date Title VII became applicable to municipali-

ties, as required by *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), and *United Airlines, Inc. v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977).

■ It is not disputed that those cases establish that a bona fide seniority system's promulgation of discrimination occurring before the effective date of Title VII is not actionable unless a discrete discriminatory act occurs after that date. The male teachers argue that such a discrete discriminatory act occurred when the Board refused to merge the "illegally maintained, separate job title lists."

■ Resolution of this issue depends on whether the maintenance of the two licenses for male and female teachers was "illegal" or whether it constituted a bona fide seniority system under section 703(h). If it was bona fide, then the refusal to merge the lists did not violate Title VII. If it was not, then its continued operation constitutes a discrete discriminatory act occurring after Title VII became applicable. Since we conclude that there is a question of fact as to whether this seniority system was bona fide, it cannot be determined at this time whether the requisite discriminatory act occurred after 1972.

### 3. Retroactive Relief

In *Los Angeles Department of Water and Power v. Manhart*, 435 U.S. 702, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978), the Supreme Court held that the award of retroactive monetary damages was inappropriate under the circumstances of that case. The Court concluded that a requirement that female employees contribute more to a pension fund than male employees violated Title VII. Nevertheless, the Court reversed the damages award, for several reasons. First, the Court noted that the fund administrator could not have known that the policy was illegal because the courts had not decided the question, and administrative agencies had expressed conflicting views. Second, there was no need of a threat of a backpay award to cause other pension fund adminis-

trators to conform their practices. Third, the prohibition against sex-differentiated employee contributions represented "a marked departure from past practice." Finally, if the award were upheld, "[t]he harm would fall in large part on innocent third parties," that is, the employees who would receive less from the fund, or who would have to pay more into it. *Id.* at 719–23, 98 S.Ct. at 1380–1382.

The Board argues that, assuming the maintenance of separate lists violated Title VII, a retroactive award of back pay would be inappropriate here, because (1) there were conflicting views expressed by HEW and the state agencies as to the legality of the Board's separate lists, (2) the failure of the Board to merge the lists was due not to recalcitrance but to the complexity of the problems created by the merger, (3) an award of backpay is not necessary to convince other school or non-school administrators to change programs where appropriate, (4) the merger of the lists represented a departure from past practices, and (5) the Board needed time to convert to a unitary physical education program as required by Title IX and "to merge the lists in a manner which would not adversely impact on female students."

■ We agree with the Board that even if it were held that the maintenance of separate seniority lists for men and women violated Title VII, the relief sought here—an award of back pay—would be inappropriate. First, the Board had received conflicting views as to whether the separate seniority lists were lawful. The New York State Commissioner of Education had determined that they were not; a representative of HEW had indicated that merger of those lists would violate the Title IX rights of the female students. Indeed, the conflict was the original precipitating cause of this suit which, at the time the suit was filed, sought protection for the Board against being caught between the conflicting views. The male teachers argue that because we ruled on HEW's motion to dismiss that HEW had not taken a position on this ques-

tion, the Board was not given conflicting views by the administrative agencies. However, we ruled only that for purposes of determining whether a controversy existed between the parties, HEW had not made a final determination on the matter. It does not follow from that conclusion that the Board could not reasonably believe from the letter of the HEW representative that there was a conflict in the views of the state agencies and HEW.

Second, nothing in the record suggests, and experience renders it altogether doubtful that an award of back pay is necessary to induce other school or non-school administrators to change their practices where appropriate. Third, the current prohibition against separate seniority lists represents a departure from past practices. Finally, we note that payment of a retroactive award would be made ultimately by "innocent third parties," that is New York City taxpayers.

Accordingly, since under *Manhart*, it would be "inappropriate" to award back pay (the sole relief requested), the Title VII claim is dismissed.

*B. Title IX*

Section 901 of Title IX, 20 U.S.C. § 1681, provides:

"No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ."

The Board argues that under the regulations promulgated by HEW to implement this statute, it was not required to merge the two lists until July 1978. The section of the regulations which required the Board to merge the two physical education programs did not become effective until July 1978. 45 C.F.R. § 86.34(a). The Board argues that it reasonably believed that it would have violated Title IX if it had merged the seniority lists before the merger of the physical education programs was complete.

The Board bases this belief on a letter to that effect from John Wodatch, a representative of HEW. That letter stated:

"As you are aware, Title IX requires an expeditious transition to a unitary physical education program in which staff and student assignment would not be predicated upon sex. Until the full merger of the male and female physical education programs is accomplished, a reduction in the number of women physical education teachers would result in female physical education classes being taught by teachers with less experience and expertise in the activities which are currently taught to female students. Conversely, male students would continue to receive instruction from teachers who have been trained, tested, and have gained experience in the activities which make up the male physical education program. Such disparate treatment would constitute a violation of Title IX's general prohibition against discrimination based upon sex. "If the Board of Education cannot prevent such an adverse impact from occurring, I have concluded that the merger of these seniority lists for excessing and lay-off purposes should not occur until there is a complete merger of the physical education departments, instructional programs and licensing examinations as mandated by Title IX."

The male teachers argue that the Board was required by another section of the regulations not to "[m]aintain or establish separate lines of . . . seniority systems . . . for similar jobs, . . . which classify persons on the basis of sex, unless sex is a bona-fide occupational qualification for the positions in question," 45 C.F.R. § 86.55(a), and that that section was effective July *1975*, 45 C.F.R. § 86.1.

The Board responds that the section of the regulations on which the male teachers rely is inapplicable because, it argues, it "did not maintain or establish separate seniority systems 'on the basis of sex.' " [3]

---

3. Letter from Deborah Rothman, Assistant Corporation Counsel, dated September 17, 1980.

■ Resolution of the question depends on whether maintenance of the separate lists was discriminatory. As indicated above, there is a question of fact raised as to this issue.[4]

Accordingly, the motion for summary judgment on the Title IX claim is denied.

## C. Fourteenth Amendment

■ The Board contends that there is no evidence of record which establishes that its maintenance of two seniority lists was motivated by "invidious discriminatory purposes" as required by *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976), and *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977), in cases of alleged violations of the Fourteenth Amendment.

The teachers argue that they have demonstrated the requisite discriminatory purpose by virtue of the Board's refusal to merge the lists despite repeated decisions since 1973 that the separate lists were unlawful.[5] *Matter of Board of Education v. Stein*, 47 App.Div.2d 964, 396 N.Y.S.2d 1016 (2d Dep't 1975); *Matter of Daniel Gavrin v. Board of Education*, 16 Ed.Dept.Rep. 109 (Comm'r of Education 1976).

However, we disagree that such facts, even if true would suffice to prove discriminatory purpose. A number of purposes may be inferred with equal validity from those facts. Among such inferences is that the Board chose not to disadvantage the female students by excessing additional female teachers before the merger of the physical education programs was complete (as the Board was advised by the HEW representative would happen).

Accordingly, the motion for summary judgment on the claim under the Fourteenth Amendment is denied.

## D. State Law

The teachers allege violations of their rights under sections 296 and 297 of the New York Executive Law and under the equal protection clause of the New York Constitution.

In the papers submitted on this motion, the parties fail to address the merits of the claims asserted under state law. Neither side discusses whether and how the considerations relevant to those claims differ from those pertaining to the federal claims. Therefore it cannot be determined whether either side is entitled to summary judgment on these claims.

Accordingly, the motion for summary judgment on the claims under the New York Executive Law and Constitution is denied.

The Board of Education is granted summary judgment dismissing the claim under Title VII. The motion for summary judgment on all other claims is denied.

It is so ordered.

---

4. Although we conclude that there is a question of fact as to whether the Board violated the HEW regulations implementing Title IX, we note that there is some question as to whether, even if such a violation had occurred, the damage remedy sought by the male teachers would be appropriate under Title IX. *See North Haven Board of Education v. Hufstedler*, 629 F.2d 773 (2d Cir. 1980). Courts in other circuits have held that the statute does not reach employment discrimination against teachers. *Seattle University v. United States Department of HEW*, 621 F.2d 992 (9th Cir. 1980); *Romeo Community Schools v. United States Department of HEW*, 600 F.2d 581 (6th Cir.), *cert.* denied, 444 U.S. 972, 100 S.Ct. 467, 62 L.Ed.2d 388 (1979); *Junior College District of St. Louis v. Califano*, 597 F.2d 119 (8th Cir.), *cert. denied,* 444 U.S. 972, 100 S.Ct. 467, 62 L.Ed.2d 388 (1979); *Islesboro School Committee v. Califano*, 593 F.2d 424 (1st Cir.), *cert. denied,* 444 U.S. 972, 100 S.Ct. 467, 62 L.Ed.2d 387 (1979); *University of Toledo v. United States Department of HEW*, 464 F.Supp. 693 (N.D.Ohio 1979). *But see Dougherty County School System v. Harris*, 622 F.2d 735, 738 (5th Cir. 1980).

5. Letter from Janis Levart Barquist, attorney for defendants, dated January 13, 1981.